BURCH, J.
 

 Defendant was charged in two separate actions with the violation of the Civil Engineers’ Act and
 
 *855
 
 the Architects’ Act, respectively. The defendant is not certified or licensed under either act. The court below sustained a demurrer to each amended complaint without leave to amend. The People have appealed and make no point that they were denied leave to further amend. They contend that in each case the amended complaint stated a public offense. We will, therefore, consider on this appeal only the sufficiency of the respective complaints to state a public offense whether it be as a matter of pleading or as a matter of constitutional law.
 

 Architect's Case
 

 Superior Court No. 191979
 

 The amended complaint charges the defendant with the violation of sections 5536 and 5537 of the Business and Professions Code of California, and specifies that he-
 

 “. . . did wilfully and unlawfully put out, place, and display a sign, card and other device which might indicate to the public that he was an Architect and that he is and was qualified to engage in the practice of
 
 architecture;
 
 advertise that he was an Architect and that he is and was qualified to engage in the practice of architecture; and engaged in the practice of architecture and did practice architecture without a Certificate and without having obtained a Certificate from the Board of Architectural Examiners in the State of California authorizing him to practice architecture; and that the Defendant, John Lloyd Weight, agreed with Salvadore Villiasenor to execute and design and furnish plans, drawings, and specifications, and did execute, design and furnish plans, drawings, and specifications to Salvadore Villiasenor, having failed to inform said Salvadore Villiasenor, in writing, that he, the said John Lloyd Weight, was not an Architect licensed by the State of California to practice architecture in violation of Section 5537 of the Business and Professions Code of California. ’ ’
 

 The Architects’ Act (Bus. & Prof. Code, §§ 5500-5604) sets out a comprehensive plan of regulation, including the creation of a state board composed of five architects selected from architects of good standing, licensed to practice in this state (§ 5514). This board is authorized to prosecute all persons guilty of violating the provisions of the act (§5525). The board is further authorized to formulate and adopt a code of rules and regulations for its government in the examination of applicants for certificates to practice architecture in this state, and to formulate and adopt such other rules and regu
 
 *856
 
 lations as may be necessary and proper. “No rule or regulation shall be inconsistent with this chapter” (§5526). The act defines an architect (§ 5500) as follows:
 

 “As used in this chapter, architect refers to a person who holds a certificate to practice architecture in this State under authority of this chapter.”
 

 Section 5536 reads as follows: “It is a misdemeanor, punishable by a fine of not less than fifty dollars nor more than five hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment, for any person, without a certificate, to practice architecture in this State or to advertise or put any sign or card or other device which might indicate to the public that he is an architect or that he is qualified to engage in' the practice of architecture.”
 

 Section 5537 provides: “This chapter does not prevent any person from making any plans or drawings for his own buildings or from furnishing to other persons, plans, drawings, specifications, instruments of service, or other data for buildings, if, prior to accepting employment or commencing work on such plans, drawings, specifications, instruments of service, or other data, the person, so furnishing such plans, drawings, specifications, instruments of service, or data, fully informs such other person or persons, in writing, that he, the person proposing to furnish such plans, drawings, specifications, instruments of service, or data, is not an architect. ’ ’
 

 Sections 5536 and 5537 were adopted as part of the Business and Professions Code in 1939 (Stats. 1939, ch. 33, p. 343) from section 5 of the original act (Stats. 1901, ch. 212, p. 644) as amended April 6, 1929 (Stats. 1929, ch. 68, p. 142). The 1929 amendment added the following words to the first sentence of old section 5, now section 5536: “or that he is qualified to engage in the practice of architecture” immediately following the clause “that he is an architect.” The 1929 amendment also changed the requirement of notification from the direction that he “fully inform” his employer to the present requirement that he furnish written notice. The 1929 amendment also substituted for the words in the original section 5 “plans or other data for buildings” the present words “plans, drawings, specifications, instruments of service, or other data for buildings.” The new words “instruments of service” were held in
 
 Joseph
 
 v.
 
 Drew,
 
 36 Cal.2d 575 [225 P.2d 504], to signify to the profession the final plans and specifications utilized for the actual construction of the building as distinguished from preliminary sketches and drawings.
 

 
 *857
 
 The validity of the original act was judicially determined in
 
 Ex parte McManus,
 
 151 Cal. 331 [90 P. 702]. It was there held that, as then constituted, the act did not violate sections 11 or 21 of article I of the state Constitution, and that the act was uniform in its operation as to all architects who have not a certificate, and makes no arbitrary or other discrimination as to members of that class, nor does it grant any special privileges or immunities to any of that class which are not possessed by or extended to all.
 

 The constitutionality of the act, as amended in 1929, requiring the unlicensed architect to give written notice to his employer, was adjudicated in
 
 Baer
 
 v.
 
 Tippett,
 
 34 Cal.App.2d 33 [92 P.2d 1028], It was there argued that the dangers which might arise to the public from defects in plans or construction would be met by requiring merely an oral notice. The court said on page 40: “... it cannot be said that the object sought to be attained is not furthered by providing that the required notice shall be given in a definite form that may remove any doubt as to whether or not it was given.”
 

 Defendant, however, contends that in other respects the code sections are vague, an unlawful delegation of legislative power to the courts, and an abridgment of the right of free speech. These objections are directed to the prohibition contained in section 5536 with regard to any advertisement or the use of business cards which “might indicate” to the public that he is an architect or that he is qualified to engage in the practice of architecture. Insofar as a nonregistered practitioner is forbidden “to advertise or put (out) any sign or card or other device which might indicate to the public that he is an architect,” we think the act is clear and justified as a regulatory measure in view of the provisions of section 5500 quoted above, since the “architect” is by law one “who holds a certificate to practice architecture in this State under authority of this chapter. ’ ’ In this respect, the mandate does no more than forbid deceptive advertising. In
 
 Serve Yourself Gas etc. Assn.
 
 v.
 
 Brock,
 
 39 Cal.2d 813, 818 [249 P.2d 545], the legislative control of misleading advertising is deemed a proper exercise of the police power. Defendant makes the contention that the statute is unconstitutionally vague because of the descriptive words therein contained, to wit, “might indicate.” In this context, we think the objection is not sound; that the words have a definite meaning. They reasonably warn one that the force and substance of his publication shall not carry the implication that he is a regis
 
 *858
 
 tered architect under the act. Any type of advertisement which might indicate that the petitioner was an architect as defined in the act is reasonably forbidden by the act, and need cause no concern to a person desirous of conforming to the requirement. We, therefore, conclude that a public offense is stated in the complaint insofar as the complaint charges that the defendant “did wilfully and unlawfully put out, place, and display a sign, card and other device which might indicate to the public that he was an Architect.” Whether the defendant employed an advertisement which did so indicate as alleged will be a question of fact to be proved by the People at the trial. He makes the same contention with respect to that portion of the complaint which charges that he “engaged in the practice of architecture and did practice architecture without a Certificate and without having obtained a Certificate from the Board of Architectural Examiners in the State of California authorizing him to practice architecture.” Section 5537 specifically authorizes a person without a certificate to furnish “to other persons, plans, drawings, specifications, instruments of service, or other data for buildings, if, prior to accepting employment or commencing work on such plans” he furnishes the statutory notice. In
 
 McDowell
 
 v.
 
 City of Long Beach,
 
 12 Cal.App.2d 634, 638 [55 P.2d 934], it was settled that the reference now in section 5536 to the practice of architecture is used in no broader sense than the expression now in section 5537, to wit, furnishing plans or other data for buildings. The court holds: “When the "statute refers to the ‘practice of architecture’ and to ‘furnishing plans or other data for buildings,’ the former expression is not used in any broader sense than the latter; in other words, the preparation of plans and data is used as synonymous with ‘practice of architecture.’ ”
 

 The prohibitions of section 5536 relate to (1) the practice of architecture and (2) advertising by a noncertificated person either that he is an architect or that the state has licensed him as one having the qualifications for a certificate set up in the act. The permissions granted by section 5537 in no way release the controls on deceptive advertising, as we have shown above. In view of the McDowell case,
 
 supra,
 
 our question is narrowed to whether the 1929 amendments alter the legal effect given section 5 of the 1901 law by that case. If, as held in the McDowell case “plans and other data for buildings” is no less or other than “the practice of architecture” as those terms were employed in section 5 of the original act,
 
 *859
 
 we find no more restricted grant in the related amendment in 1929. “Plans, drawings, specifications, instruments of service, or other data for buildings” constitute the practice in as large a sense as do the words “plans or other data for buildings.” It therefore must follow that section 5537 in the respect mentioned authorizes the person who does not possess the certificate “to practice architecture.” In this view the charge of the amended complaint that the defendant “engaged in the practice of architecture and did practice architecture without a Certificate and without having obtained a Certificate from the Board of Architectural Examiners in the State of California authorizing him to practice architecture” fails to state a public offense. Defendant’s short answer is that he does not require the certificate from the board because section 5537 expressly authorizes him to perform those services which constitute the practice of architecture without possessing the certificate. The People suggest, in support of this charge, that the right conferred is made subject to the statutory notice. So it is. They contend further that the giving of the notice is a matter of defense and need not be charged.
 

 We are not dealing here with an exception or justification of an unlawful act. Instead, we have a case where the criminal sanction depends upon the failure to comply with a statutory condition upon a fundamental right. Unless the failure to perform the condition is charged, no offense is charged. See
 
 Harris
 
 v.
 
 Bucher,
 
 25 Cal.App. 380 [143 P. 796]. The statutory notice is provided for the benefit of the owner merely to place him on his guard as to whether or not he wishes to employ an uncertificated person
 
 (Van Doren
 
 v.
 
 Burns,
 
 106 Cal.App. 224, 226 [288 P. 1107]). The matter is between the defendant and his employer. The sanction is for failure to inform the employer
 
 (Palmer
 
 v.
 
 Brown,
 
 127 Cal.App.2d 44, 53 [273 P.2d 306]).
 

 The complaint also charges that the defendant, John Lloyd Wright, agreed with Salvadore Villiasenor to execute and design and furnish plans, etc., and did so furnish plans, etc., “having failed to inform said Salvadore Villiasenor, in writing,” that Wright was not an architect licensed by the state, etc. Since these allegations charge the defendant with a crime defined in the act they state a public offense. Because at least two of the several charges or counts in the complaint do state a public offense, the demurrer should have been overruled. The judgment of dismissal must be reversed.
 

 
 *860
 
 Civil Engineer’s Case
 

 Superior Court No. 191980
 

 The People have appealed from a judgment for defendant after demurrer sustained to the amended complaint which charged defendant with violation of sections 6787, subdivision (a), and 6731, Business and Professions Code, part of the Civil Engineers’ Act. Section 6787, subdivision (a), provides that:
 

 “Every person is guilty of a misdemeanor . . .:
 

 “ (a) Who, unless he is exempt from registration under this chapter, practices or offers to practice civil engineering in this State according to the provisions of this chapter without legal authorization. ’ ’
 

 Section 6731 provides: “Civil engineering embraces the following studies or activities in connection with fixed works for irrigation, drainage, water power, water supply, flood control, inland waterways, harbors, municipal improvements, railroads, highways, tunnels, airports and airways, purification of water, sewerage, refuse disposal, foundations, framed and homogeneous structures, buildings or bridges:
 

 “(a) The economies of, the use and design of, materials of construction and the determination of their physical qualities.
 

 “(b) The supervision of the construction of engineering structures.
 

 “(e) The investigation of the laws, phenomena and forces of nature.
 

 “(d) Appraisals or valuations.
 

 “(e) The preparation and/or submission of designs, plans and specifications and engineering reports.
 

 “Nothing in this chapter shall prohibit the preparation of plans, drawings, specifications, estimates, or instruments of service for single or multiple dwellings not more than two stories and basement in height; garages or other structures appurtenant to such dwellings; farm or ranch buildings; or any other buildings, except steel frame and concrete buildings, not over one story in height, where the span between bearing walls does not exceed twenty-five (25) feet.
 

 ‘'Civil engineering also includes city and regional planning insofar as any of the above features are concerned therein, and geodetic, municipal and topographic surveying.”
 

 The charging part of the amended complaint specifies defendant’s engineering activities in connection with “a concrete building, over one story in height.” The People contend
 
 *861
 
 the language forbids sneh activities. The defendant contends that the language in its context is not subject to such a construction, or, at least, is so ambiguous, indefinite and vague as to render it repugnant to the concept of due process of law. Insofar as material to this issue, we conclude that the proper and grammatical construction of the statute does not prohibit the drawing of plans, etc., by an uncertificated person for a concrete building over one story in height unless such building be neither (1) a single or multiple dwelling, not over two stories and basement in height, nor (2) a garage or other appurtenant structure, nor (3) a farm or ranch building. Stated otherwise, the uncertificated person may draw plans, etc., for a single or multiple dwelling, etc., or garage or other appurtenant structure thereto, or a farm or ranch building, though the same be made of concrete and be over one story in height. In construing the statute, we think that no confusion need arise in respect to a fourth category, namely, “any other buildings,” for the reason that any limitations in this category have no bearing upon the first three categories mentioned above. In the permitted class of “any other buildings,” there are excluded, as we construe the words used, steel frame buildings and concrete buildings, and also buildings over one story in height and also one-story buildings where the span between the bearing walls exceeds 25 feet. However, since the limitation upon concrete buildings is limited to the category of “any other buildings,” the criminal conduct is not stated unless the concrete building over one story in height is alleged not to be within the stated permissions in the first three categories.
 

 It is our purpose in construing the statute to find the intent of the Legislature
 
 (Helping Hand Home
 
 v.
 
 San Diego County,
 
 26 Cal.App.2d 452, 455 [78 P.2d 778]), and to so construe the statute without doing violence to its words as to manifest a constitutional purpose on the part of the Legislature.
 
 (Franklin
 
 v.
 
 Peterson,
 
 87 Cal.App.2d 727, 730 [197 P.2d 788];
 
 City of Los Angeles
 
 v.
 
 Belridge Oil Co.,
 
 42 Cal.2d 823, 832 [271 P.2d 5];
 
 United States
 
 v.
 
 Harriss,
 
 347 U.S. 612, 617, 618 [74 S.Ct. 808, 98 L.Ed. 989].) The amended complaint in this case fails to state a public offense in the terms of the statute, or otherwise, because defendant’s activities with respect to a concrete building over one story in height are not
 
 ad hoc
 
 prohibited.
 

 The defendant contends that the phrase “steel frame and concrete buildings” refers to a single type of building con
 
 *862
 
 structed by steel frame filled with concrete. Such a construction is grammatically possible, but not necessary. In the context in which the phrase is used, it is the clear intent of the Legislature, and a reasonable construction without violence to the words used, to construe the phrase as meaning steel frame buildings and concrete buildings. This is the construction we place upon the phrase.
 

 “ When necessary to harmonize the provisions of a statute or give effect to all of its provisions, the word ‘and’ may be read as ‘or’ and conversely. State v.
 
 Brandt,
 
 41 Iowa, 593.” (Words and Phrases, perm.ed., vol. 3, p. 595.)
 

 (See also
 
 Carlsen
 
 v.
 
 State,
 
 127 Neb. 11 [254 N.W. 744];
 
 Bania
 
 v.
 
 Town of New Hartford,
 
 138 Conn. 172 [83 A.2d 165];
 
 Rolland
 
 v.
 
 Commonwealth,
 
 82 Pa. 306 [22 Am.Rep. 758];
 
 Bird
 
 v.
 
 State,
 
 131 Tenn. 518 [175 S.W. 554, Ann.Cas. 1917A 634];
 
 State
 
 v.
 
 Steiner,
 
 160 Wis. 175 [151 N.W. 256];
 
 Williams
 
 v.
 
 State,
 
 99 Ark. 49 [137 S.W. 927, Ann.Cas. 1913A 1056];
 
 Proprietary Assn.
 
 v.
 
 Board of Pharmacy,
 
 27 N.J. Super. 204 [99 A.2d 52, 59].)
 

 (See also collation of cases in Words and Phrases, perm.ed., vol. 3, under the title “And,” Criminal Statutes, p. 596, and previous.)
 

 Upon these considerations, the complaint in the engineer’s case fails to state a public
 
 offense.
 

 Turrentine, P. J., concurred.
 

 Glen,
 
 J., did
 
 not participate in this opinion.