[Civ. No. 10895. Third Dist. Jan. 11, 1966.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. L. J. PRESLEY et al., Defendants and Appellants.

Carr, Kennedy & Asbill and Richard J. Asbill for Defendants and Appellants.

Harry S. Fenton, Holloway Jones, Jack M. Howard, John P. Horgan, William R. Edgar and Richard S. Levenberg for Plaintiff and Respondent.

PIERCE, P. J.—Defendants own an apartment house on the corner of Tehama and Liberty Streets in Redding, California. They also owned the fee underlying a portion of Tehama Street and entirely occupied thereby. This parcel adjoints the lot on which the apartment house is located.

In this condemnation proceeding the state, as part of a freeway project, condemned the fee of the parcel underlying Tehama Street along which the freeway will run and also condemned the access rights of defendants to Tehama Street. The proceeding was tried to the court.

The sole question raised on appeal is whether the trial court erred when in fixing damages for the condemnees' loss of access and similar rights it refused to include any amount for (1) the increased noise, fumes and annoyance which would result from the more heavily trafficked freeway, and (2) for loss of street parking privileges on Tehama Street previously enjoyed.[1] (Defendants' parking privileges on Liberty Street will be unaffected by the street improvement.) Our holding is that neither of the matters referred to is a property interest and that, therefore, the losses claimed are not compensable, and we will affirm the judgment.

The particular portion of the field of the law of eminent domain with which we deal is access rights and the right to light, air and view of an abutting owner. California Constitution, article I, section 14, in part, says: "Private property

---

[1]The trial court found that the value of the apartment house property would be diminished by the loss of parking privileges and by the increased traffic noises, fumes and annoyances but held they were noncompensable. The court also fixed the amounts which should be assessed were it determined on appeal that a legal damage had been suffered.

shall not be taken or damaged[2] for public use without just compensation." This article, self-executing, is bulwarked by title 7 of part 3 of the Code of Civil Procedure, included within which is section 1248, providing in effect that the trier of fact must ascertain and assess the value of the property sought to be condemned and if that property constitutes only a part of a larger parcel, the damages suffered by the severance of the part not taken from the part taken.

■ "Not every depreciation in the value of the property not taken can be made the basis of an award of damages" in eminent domain. (*People* v. *Ricciardi*, 23 Cal.2d 390, 395 [144 P.2d 799]; *Eachus* v. *Los Angeles etc. Ry. Co.*, 103 Cal. 614 [37 P. 750, 42 Am.St.Rep. 149].) But if an owner abutting a street *has* a property right or interest and it has been impaired or damaged, he is entitled to compensation. (*Rose* v. *State of California*, 19 Cal.2d 713, 729 [123 P.2d 505]; *Bacich* v. *Board of Control*, 23 Cal.2d 343, 349 [144 P.2d 818].)

■ The right of access and the similar right of light, air and view which we have mentioned above are property rights. They are easements which a property owner abutting a street enjoys in addition to the rights which the public in general has to use the streets. These abutting owners' rights include right of ingress and egress to and from the streets by such modes of conveyance and travel as are appropriate to the highway, exercised in such manner as is reasonable. (See *Rose* v. *State of California, supra*, at p. 728; *Bacich* v. *Board of Control, supra; People* v. *Ricciardi, supra; People* v. *Russell*, 48 Cal.2d 189 [309 P.2d 10]; *People* v. *Ayon*, 54 Cal.2d 217 [5 Cal.Rptr. 151, 352 P.2d 519]; *People* v. *Symons*, 54 Cal.2d 855 [9 Cal.Rptr. 363, 357 P.2d 451]; *Breidert* v. *Southern Pac. Co.*, 61 Cal.2d 659, 663 [39 Cal.Rptr. 903, 394 P.2d 719]; *Freeways and the Right of Abutting Owners*, 3 Stan.L.Rev., pp. 298, 301.) But, as indicated above (and it bears repetition), "Not every interference with the property owner's access to the street upon which his property abuts and not every impairment of access, as such, to the general system of public streets constitutes a taking which entitled

---

[2]The words "or damaged" were not included in the Constitution of 1849. They were added by the Constitution of 1879. It has been said that this was an intent by the people of the state to "liberalize the policy of compensation in the area of consequential injury, as distinguished from an actual appropriation." (Concurring opinion of Justice Edmonds in *Bacich* v. *Board of Control, supra*, 23 Cal.2d 343, 357.)

him to compensation.'' (*Breidert* v. *Southern Pac. Co.,* *supra,* at pp. 663-664.)

■ Determination of the problem under the facts of any case as to whether an access right has, or has not, been invaded is one of law for the court. (*Rose* v. *State of California, supra,* 19 Cal.2d 713, 727 ; *People* v. *Ricciardi, supra,* 23 Cal.2d 390, 396-397 ; *Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659, 662.) The existence of such a right having been determined, it then becomes the function of the trier of fact to fix the diminution in value, if any, which the property has suffered by reason of the interference of the right. (*Breidert* v. *Southern Pac. Co., supra,* at p. 664.)

In determining the extent of the abutting owner's right or easement of access, the problem of definition is difficult and in the nature of the matter *specificity* of definition is impossible. It is not very helpful to state that each case must be determined upon its own facts but that is as close to abstract definition as the problem permits. (See, e.g., *People* v. *Russell,* 48 Cal.2d 189, 195 [309 P.2d 10] ; *Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659, 665.)

Definition of the opposite extremes is easy. On the one hand, courts will not award compensation for every inconsequential inconvenience, discomfort and displeasure suffered by the abutting owner as the result of the building of each new public improvement. To so hold would make the cost of public improvements prohibitive. At the other extreme, whenever the courts have found a public improvement substantially interfering with the access of the abutting owner to the street, a property right has been said to exist which has been invaded and compensation based upon the diminution in value of the right interfered with has been awarded.

Between these extremes, our reading of the cases does show discussion of policy factors which are helpful. ■ As stated above, interference to be compensable must be ''substantial'' and the right urged must be ''reasonable.'' (*Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659, 663-664.) It has been stated (in the majority opinion in *Bacich* v. *Board of Control, supra,* 23 Cal.2d 343, at p. 349) that a test frequently mentioned by the authorities, that the abutting owner may recover if (and presumably only if) he has suffered a damage peculiar to himself and different in kind, as differentiated from degree, from that suffered by the public generally, ''is of no assistance in the solution of the

problem." The reasoning is that if an abutting owner has a property right and if it is impaired the damage is necessarily peculiar to himself. But Justice Traynor, dissenting in *Bacich,* said (23 Cal.2d at p. 372) : ". . . This statement draws its conclusion from an assumption of the very thing to be proved." We mention this because, as we see it, consideration of the problem in terms of whether the damage suffered is unique to the condemnee or only that which he shares in general with the rest of the traveling public is one of the more vital factors which aid in reaching a solution of the question: What is the extent of the access right—does it reach the thing which the condemnee claims?

In the determination of whether or not in any given case the claimed interference rises to the status of the invasion of a right there is necessarily involved a weighing of the question as to whether an exercise of the state's police power has been overlapped by its exercise of the power of eminent domain. (See *Freeways and the Rights of Abutting Owners,* 3 Stan. L. Rev., pp. 298, 302.)

The majority opinion in *Bacich* (on p. 351) quotes from Sedgwick on Constitutional Law: " 'The tendency under our system is too often to sacrifice the individual to the community. . . .' " We imply no criticism of that statement (see *Beckley* v. *Reclamation Board,* 205 Cal.App.2d 734 [23 Cal. Rptr. 428]) when we footnote it with Justice Traynor's statement in his concurring opinion in *House* v. *Los Angeles County Flood Control Dist.,* 25 Cal.2d 384, 396-397 [153 P.2d 950] : ". . . The decisive consideration is the effect of the public improvement on the property and whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking."

Re : *The Contention that Defendants had a Street Parking Right, the Destruction of which Entitles them to Compensation.*

The cases cited and quoted from above have been principally concerned with cul-de-sacs, circuity of travel, restrictions of view caused by clover-leafs, underpasses and similar incidents of highway construction. Precedent brings us closer to the questions raised in the case at bench. In *People* v. *Ayon,* 54 Cal.2d 217 [5 Cal.Rptr. 151, 352 P.2d 519], the only parking problem was off street, but the Supreme Court in its opinion (per Justice Peters) stated on page 224: " 'In the proper exercise of its police power in the regulation of traffic,

a state or county may do many things which are not compensable to an abutting property owner, such as constructing a traffic island, placing permanent dividing strips which deprive an abutter of direct access to the opposite side of the highway, painting double white lines on the highway, or designating the entire street as a one-way street. [Citations.]' (*People* v. *Russell*, 48 Cal.2d 189, 197 [309 P.2d 10].) The *Russell* case held that the use of a parkway as a traffic separation strip between a state highway and a county road was a noncompensable traffic regulation.''

Defendants' argument is that in erecting their apartment house they provided no off street parking, relying upon the City of Redding's policy to permit unlimited curb parking on both Tehama and Liberty Streets and there had never been any suggestion that that condition would ever be changed. This, it is argued, had by lapse of time become the basis of a substantial part of a right of access which the building of this freeway destroyed.

No specific authority is cited for this proposition.

 The respondent's counterargument is that there is, and can be, no proprietory right in an abutting landowner to park automobiles on a street. Under the authorities and principles stated above we find this argument sound. Vehicle Code sections 22506 and 22507 expressly authorize local authorities to prohibit or restrict the parking of vehicles on state highways and upon streets ''during all or certain hours of the day.'' Parking meters have been held to be a proper adjunct to traffic control. (*Mervynne* v. *Acker*, 189 Cal.App. 2d 558 [11 Cal.Rptr. 340].)

Obviously, so far as the general public is concerned, all of these measures are a legitimate exercise of the state's regulatory police power. To hold otherwise would be to place a staggering and unjustifiable burden upon the cost of government and public improvement and, more important, seriously impair the public safety. (See *Freeways and the Rights of Abutting Owners*, 3 Stan. L. Rev., pp. 298, 303.) The parking privilege which defendants enjoyed was permissive and existed only at sufferance by the city. Continuance over the years created no prescriptive right. Even as a permissive privilege it was only one which defendants enjoyed as members of the public. No proprietory right to park existed and therefore none was severed when the state took over the city street and created a freeway.

The only case which we have been able to find suggesting a contrary rule is *Lane* v. *San Diego Elec. Ry. Co.*, 208 Cal. 29 [280 P. 109]. There a street railway company so altered a loop of its tracks upon a street that automobiles and trucks which formerly could be parked on the street adjacent to plaintiff's property without being interfered with by passing cars might not be able to do so. It was held that this was an interference with the abutting owner's right to access. This case, however, was a controversy between the owner and a street railway company in which the latter's acts were characterized as a nuisance. It was not a controversy in which the rights of the public, acting through government in a legitimate exercise of its police power, was involved. There is a difference between the extent of access rights between the abutting owner and another individual and those which he enjoys against the public. (Institute on Eminent Domain (1963) p. 80.)

No California case has been called to our attention in which the question of the right to an award of damages for the loss or infringement of a parking privilege has been presented.[3]

 While no California case in point has been called to our attention, the point has been raised and settled in another jurisdiction. In *State* v. *Williams* (1964) 64 Wn.2d 842 [394 P.2d 693], where the identical question was raised, it was held (on p. 694 [394 P.2d]): ". . . Traffic regulations, including parking while loading and unloading, are police power regulations and are not a part of an abutting property owner's vested right of ingress and egress."

We so hold here.

Re: *The Contention that Defendants are Entitled to Compensation for an Increase in Noise, Fumes and Annoyances which Increased Traffic on the Freeway will Produce.*

 In making their claim under the caption above, defendants argue that their right to be free from the increase of noise, fumes and annoyances which the presence of the freeway will entail is a part of their abutting land owners'

---

[3]In *City of Berkeley* v. *Von Adelung* (1963) 214 Cal.App.2d 791 [29 Cal.Rptr. 802], it is stated that the city's taking included a ban upon parking in front of defendant's lot. It is also stated that the trial court awarded no severance damages. Its judgment was affirmed. The condemnee claimed other damage (to be noted). But the matter of the ban on parking was not discussed and apparently no claim was made therefor.

right of light, air and view. Cited generally is *People* v. *Ricciardi*, 23 Cal.2d 390 [144 P.2d 799]. We have discussed this and other cases above. We do not find these cases controlling on the point under discussion.

We have express precedent in California opposing defendants' contention. In *City of Berkeley* v. *Von Adelung, supra* (1963) 214 Cal.App.2d 791, the city in rounding off the angle of a street corner took a portion of defendant's corner lot. "Defendant offered to prove that the effect of the project as a whole would be to approximately triple traffic past defendant's lot, with resultant increase in fumes and traffic noises." (At pp. 792-793.) The court held that any decrease in the value of defendant's remainder because of this was uncompensable: that it was an inconvenience "general to all property owners in the neighborhood, and not special to defendant." (P. 793.) We agree with this view for that reason and also for the reasons stated explaining our holding that the loss of a parking privilege is uncompensable. We hold defendants' contention unsound.

*City of Hayward* v. *Unger*, 194 Cal.App.2d 516 [15 Cal. Rptr. 301], which defendants cite is distinguishable. It was a street widening case in which the value of an increased flow of traffic past appellant's store was deemed to be a special benefit. Defendants question how an increased flow of traffic can be considered a special benefit when a diversion of traffic by the rerouting of a highway diverting travel is not deemed to be a special damage. The argument they pose is a non sequitur. It argues a generalization to prove a specific. *City of Hayward* v. *Unger, supra,* did not hold that all increases in traffic flow are special benefits. Neither do all traffic diversions damage just the public generally. (See cases cited, *supra.*) All the *Hayward* case holds is that under the facts of that case a benefit *peculiar to the condemnee* had been justifiably found by the trial court.

The judgment is affirmed.

Regan, J., and Warne, J. pro tem.,* concurred.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.