[No. B002779. Second Dist., Div. One. June 28, 1984.]

FRANK A. BOCCATO, Plaintiff and Appellant, v.
CITY OF HERMOSA BEACH et al., Defendants and Respondents.

COUNSEL

John B. Murdock for Plaintiff and Appellant.

Charles J. Post, City Attorney, for Defendants and Respondents.

OPINION

**LILLIE, Acting P. J.**—Plaintiff Frank Boccato appeals from judgment entered against him and in favor of defendants City of Hermosa Beach and City Council of Hermosa Beach.

In 1980, to alleviate parking problems in its beach area, the City of Hermosa Beach established a preferential parking program which restricted parking near the beach by the general public. Two zones were designated, a yellow metered zone closest to the beach, and a neighboring one-hour blue zone. Exemption permits were available to city residents to avoid the parking restrictions in these zones. A fee was charged for yellow zone permits; permits for the blue zone were free to residents in that zone. In December 1981 the city council revised this program by Resolution No. 81-4488, combining the two zones into one "Recreational Parking Area" consisting of the streets west of Loma Drive. All permits for this combined area had to be purchased. The city informed the public that this new resolution would be effective March 1, 1982, and began selling the new permits on February 16, 1982.

Frank Boccato, a merchant in the designated area, brought the within action on February 25, 1982, to enjoin enforcement of the resolution until defendants received a valid permit from the Coastal Commission authorizing the program. He also sought attorney fees for acting as private attorney general. At the March 12 hearing on the order to show cause, the city advised the court of a letter received the previous day from the Coastal Commission informing the city that a coastal permit would be required for the preferential parking program. The city expressed its willingness to apply for the permit. The court granted the preliminary injunction for a period of 90 days, staying enforcement of the resolution until the Coastal Commission permit was issued; thus the city was to proceed under its prior two-zone parking program until the permit was received. Upon stipulation of the parties, the court further ordered that all permit fees collected by the city pursuant to the new resolution be held in a segregated account pending the outcome of the proceedings before the Coastal Commission.

The city promptly applied for a coastal permit. In May 1982 the commission granted the permit. The permit specifically required approval by the commission's executive director of the signs and public information plan prior to implementation of the program. It also required a showing that the city's alternative parking program for beach visitors was operative, and of the designation of additional remote parking lots for future use. The permit would not be issued until these special conditions were met.

In July 1982, Boccato brought a motion for declaratory and injunctive relief, seeking "judicial guidance regarding the permissible scope of the preferential permit system" under the Vehicle Code and the state Constitution. The court found an apparent conflict between Vehicle Code section 22507, permitting preferential parking for residents and merchants "adjacent to" restricted streets, and the resolution's authorization for preferential parking permits for *all* residents in the city, including those with residences or businesses outside the restricted area. Thus the city was enjoined from issuing further permits for parking inside the preferential area to those outside the area. In accordance with the injunction, the city council amended the resolution to restrict sale of annual parking permits to residents and merchants in the impacted area.

The challenged resolution limited the restrictions in the blue zone to the summer months, May 15 - September 15.[1] No permits were to be required during the remainder of the year in that section; yellow zone restrictions

---

[1]In May 1982, the city passed a new resolution, No. 82-4524, lowering the permit fees and limiting the parking restrictions in the blue zone to the period from May 15—September 15. This resolution was in all other respects the same as Resolution No. 81-4488, which it repealed. Plaintiff Boccato amended his complaint to include the new resolution.

were to operate all year. Implementation of this resolution had been stayed pending issuance of the coastal permit, but the permit was not issued prior to September 15, 1982. Thus the new resolution did not go into effect during the May-September period in 1982, and permits purchased for blue zone parking that season pursuant to the stayed resolution were never actually necessary. Boccato urged the city council to refund the permit fees collected from these blue-zone purchasers. The city council resolved to offer a refund of these fees upon application by the purchasers; only 21 applications for refunds were received and processed pursuant to this resolution.

The matter was heard and taken under submission by the court. Judgment was entered for defendants. The court found the preferential parking program to be consistent with Vehicle Code section 22507, inasmuch as the general adjacency permitted under the program was reasonable under the circumstances. The court also found no conflict between the program and section 22507, which governs the establishment of parking meter zones. The court considered the refund issue to be moot, and rejected plaintiff's claim for attorney fees, noting that the complaints asserted were of no real substance or validity. This appeal followed.

I

REFUND OF PERMIT FEES

Appellant contends the trial court erred in ruling that the issue of a refund of fees to residents and merchants in the blue zone was moot. ■ A question may be deemed moot when, although it initially presented an existing controversy, the passage of time or the acts of the parties or a court decision have deprived the controversy of its life. (*Guardianship of Baby Boy M.* (1977) 66 Cal.App.3d 254, 276 [135 Cal.Rptr. 866]; *National Assn. of Wine Bottlers* v. *Paul* (1969) 268 Cal.App.2d 741, 746 [74 Cal.Rptr. 303].) The trial court made no findings of fact which might illuminate its decision. ■ "In the absence of findings, on appeal every intendment is in favor of the judgment, as it is presumed that every fact or inference essential to support the judgment and warranted by the evidence was found by the trial court." (*California Teachers Assn.* v. *Board of Education* (1980) 109 Cal.App.3d 738, 748 [167 Cal.Rptr. 429].) The trial court held that the refund issue was moot; implicit in this conclusion was a factual determination that the city had already offered refunds to those who had purchased permits unnecessarily, thereby eliminating the controversy. Our review is limited to determining whether there is any substantial evidence, contradicted or uncontradicted, which will support this conclusion of the trial court. (*Bullis* v. *Security Pacific Nat. Bank* (1978) 21 Cal.3d 801, 808 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].) We find that there is.

A representative from the city manager's office testified that the city council offered a refund of the permit fee to people in the blue zone who purchased permits between February 16 and March 11, 1982, the period before the preliminary injunction halted enforcement of the new permit program. Notice of the availability of this refund was published in two local newspapers, and some refunds were given. The evidence further established that persons in the blue zone who purchased permits prior to the injunction did receive a parking privilege despite the lack of necessity for the permits; these blue zone residents were entitled by their permits to park at the yellow meters, exempt from the time limitations applicable to the rest of the public. This privilege was not limited to the summer months, but continued for a full year. In past years, some blue zone residents had purchased yellow zone permits for that privilege, and even after the injunction issued, some blue zone residents purchased these permits. This information, considered with evidence of the offered refund for those wishing to surrender their permits, supports an implied finding that refunds had been offered and given to those blue zone residents who desired them. We must disregard appellant's testimony as to the inadequacy of the refund method, as the appellate court looks only at evidence supporting the successful party and disregards the contrary showing. (*Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121].) There was substantial evidence before the trial court to support its conclusion that the refund issue was moot.

II

PROPRIETY OF THE RESOLUTION

Appellant contends the trial court erred in ruling that his claim that the city erroneously set the rates for parking zone fees by resolution rather than by ordinance was trivial and technical. Our examination of appellant's claimed defect reveals it to be without merit.

Vehicle Code section 22507 gives local authorities the power to control parking or standing of vehicles on certain streets by ordinance or resolution. This power expressly includes the right to offer preferential parking privileges to residents and merchants in the affected area by issuance of permits. Such local ordinance or resolution may contain provisions reasonable and necessary to insure the effectiveness of a preferential parking program. The City of Hermosa Beach designated the area west of Loma Drive as the "certain streets" upon which the parking privileges were to be operative; the permit system included the payment of a fee. This action was taken by resolution, as authorized by section 22507.

Appellant's claim arises out of the city's description of the designated area as including "meter posts painted or maintained with yellow color code and residential parking spaces posted one-hour parking." This description was enormously practical in making the restricted area visually indentifiable, as the yellow meters and one-hour zones were already marked. Yet appellant claims this designation converts the city's action from a preferential parking system under section 22507 to the establishment of a parking meter zone under section 22508. The significance of this claimed distinction is that 22508 action must be taken by ordinance, whereas 22507 action may be taken by ordinance or resolution.

We do not agree with appellant's interpretation. The city was not establishing a parking meter zone; it was describing a preferential parking zone by reference to a pre-existing parking meter zone. Nor was the city fixing the rate of fees for a parking meter zone, as appellant claims; it was setting permit fees for preferential parking, an action reasonable and necessary to insure the effectiveness of the parking program. The city's action is controlled by Vehicle Code section 22507 and was properly undertaken by resolution.

### III

### LIMITATION OF PERMIT ZONE

Appellant contends the trial court's failure to limit parking permit sales to persons within the yellow zone was erroneous under Vehicle Code section 22507. That section states in pertinent part: "Such ordinance or resolution may include a designation of certain streets upon which preferential parking privileges shall be given to residents and merchants adjacent to such streets for their use and the use of their guests, under which such residents and merchants may be issued a permit or permits which exempt them from the prohibition or restriction of such ordinance or resolution." The city's resolution defines the impacted area as the "streets west of Loma Drive," consisting of the previously designated yellow meter and one hour parking zones. Resident and guest permits are available to those persons living or working within the entire impacted area. The restrictions on public parking apply to the entire impacted area during the summer months. However, from September 16—May 14, only the yellow zone is restricted.

Appellant makes two distinct claims of error regarding the preferential parking in the impacted area. ■ His first claim, expressly rejected by the trial court, was that the Vehicle Code requires the preferential parking exemption to be limited to the street immediately adjacent to the residence or business establishment. This interpretation would prohibit permit parking

by a resident in a space around the corner or down one block from his residence. In considering the meaning of Vehicle Code section 22507, we are mindful that statutes must be construed in a reasonable and common sense manner, not in a manner that would lead to absurd consequences. (*Anaheim Union Water Co.* v. *Franchise Tax Bd.* (1972) 26 Cal.App.3d 95, 105 [102 Cal.Rptr. 692].) The trial court heard testimony on behalf of the city that limiting the parking program to immediate adjacency would not resolve the parking problems and would make the program unmanageable. To construe section 22507 to require this absurd consequence is unreasonable; we agree with the trial court's interpretation of this statute as only requiring general adjacency, thereby permitting residents in the impacted area to park anywhere within that area.

■ Appellant's other claim is that the impacted area acutally consists of two separate zones with two separate parking impacts, and that residents in the blue zone should not be sold permits to park in the yellow zone. The resolution describes only one impacted area; the mere fact that a portion of that area suffers this impact during summer months does not mandate formal division into two separate areas. The resolution is reasonably tailored to the needs within the entire impacted area, and the provision easing restrictions during the winter months is reasonable and necessary to insure the effectiveness of the program by limiting the program to those needs. We find no conflict between the resolution and the Vehicle Code.

IV

ATTORNEY FEES

■ Appellant's final contention is that the trial court abused its discretion in denying him an award of attorney fees under Code of Civil Procedure section 1021.5 as a "private attorney general." That section provides, in pertinent part, that such an award may be made to a successful party in any action which has resulted in the enforcement of an important right affecting the public interest if a significant benefit has been conferred on the general public or a large class of persons.

Although appellant did not receive a favorable final judgment in this action, that result is not fatal to his claim for attorney fees. (See *Westside Community for Independent Living* v. *Obledo* (1983) 33 Cal.3d 348, 352 [188 Cal.Rptr. 873, 657 P.2d 365].) Appellant did succeed in enjoining the enforcement of the new resolution pending Coastal Commission approval. However, to justify a fee award, there must be a causal connection between the lawsuit and the relief obtained. (*Westside Community for Independent Living* v. *Obledo, supra,* at p. 353.) The record contains substantial evi-

dence that the city's application for a coastal permit was a direct result of a letter from the Coastal Commission stating that a permit was required. Although appellant may have urged the commission to send the letter, that urging does not provide the necessary causal connection with the lawsuit.

Appellant was also successful in enjoining the city from issuing further permits to persons residing outside the impacted area. This was very limited success, as the court specifically did not require the city to cancel those permits already issued to outside residents. "The award for attorneys' fees is for a decision which results in the enforcement of an *important* right affecting the public interest." (*Stevens* v. *City of Glendale* (1981) 125 Cal.App.3d 986, 1000 [178 Cal.Rptr. 367]; original italics.) The trial court expressly found appellant had asserted complaints of no real substance or validity, and declined any attorney fee award on that basis. Our review of the record shows no abuse of discretion in the court's assessment of appellant's claim.

## V

### FRIVOLOUS APPEAL

Respondents ask us to impose sanctions against appellant on the grounds that the appeal is totally lacking in merit and wrongfully motivated. Under the standards set forth in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 648-651 [183 Cal.Rptr. 508, 646 P.2d 179], we do not deem this to be a proper case for the imposition of such sanctions.

The judgment is affirmed.

Hanson (Thaxton), J., and Dalsimer, J., concurred.

A petition for a rehearing was denied July 26, 1984, and appellant's petition for a hearing by the Supreme Court was denied September 12, 1984.