[No. B090063. Second Dist., Div. Six. July 16, 1996.]

JEFFREY FRIEDMAN, Plaintiff and Appellant, v.
CITY OF BEVERLY HILLS, Defendant and Respondent.

## Counsel

Mitchell, Silberberg & Knupp and Joshua L. Rosen for Plaintiff and Appellant.

Gregory W. Stepanicich, City Attorney, Richards, Watson & Gershon, Sayre Weaver and T. Peter Pierce for Defendant and Respondent.

## Opinion

**GILBERT, J.**—Vehicle Code section 22507[1] allows local agencies to create preferential parking on designated streets ". . . to residents and merchants . . . ." May a city provide preferred parking to its residents, but not to its merchants? Yes, it may.

Jeffrey Friedman, a merchant, appeals from the judgment of the trial court in favor of respondent, the City of Beverly Hills (City). The judgment denied Friedman a writ of mandate to compel the City to vacate its adoption of the resolution granting preferential parking to residents. Because section 22507

---
[1] All statutory references are to this code unless otherwise stated.

grants local entities broad power to prohibit or restrict parking, and substantial evidence supports the resolution, we affirm the judgment of the trial court.

## FACTS

Friedman owns a commercial building at the corner of Burton Way and North Wetherly Drive in Beverly Hills. The building has five retail stores and ten offices. It is located within a small island of property zoned and used for commercial purposes, surrounded by property zoned and used for residential purposes.

Parking is scarce. Friedman's tenants told him that the shortage of parking threatened their businesses. Beginning in 1986, Friedman asked the City to alter existing parking restrictions to alleviate the problems of his tenants. Nearby residents opposed the changes Friedman sought because the proposed restrictions would hinder their ability to park at or near their homes.

What followed were a lengthy series of meetings and hearings involving Friedman, the residents, City officials, City's traffic and parking commission, and other City entities. A variety of proposals were considered, but no compromise could be reached.

Ultimately, the city council adopted a resolution approving a preferential permit parking zone "LL," pursuant to Beverly Hills Municipal Code section 7-3.202. The resolution allows "1-Hour Parking 8:00 a.m. to 7:00 p.m. and No Parking 7:00 p.m. to 2:30 a.m., Monday through Saturday, Except by Permit, for the 300 block of North Wetherly Drive." The resolution allows certain residents to obtain permits so they may park in zone "LL" at any time.

Friedman then sought a writ of mandate to compel the City to vacate the resolution or to issue an injunction preventing its enforcement. His petition asserts that section 22507 preempts local legislators from creating a preferential parking district only for residents and their guests to the exclusion of adjacent merchants.

Section 21 states that "[e]xcept as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code, unless expressly authorized herein."

Section 22507 states, in pertinent part: "Local authorities may, by ordinance or resolution, prohibit or restrict the . . . parking . . . of vehicles . . .

on certain streets or highways, or portions thereof, during all or certain hours of the day. The ordinance or resolution may include a designation of certain streets upon which preferential parking privileges are given to residents and merchants adjacent to the streets for their use and the use of their guests, under which the residents and merchants may be issued a permit . . . which exempt them from the prohibition or restriction of the ordinance or resolution. . . . A local ordinance or resolution adopted pursuant to this section may contain provisions which are reasonable and necessary to ensure the effectiveness of a preferential parking program."

The trial court determined that section 22507 constitutes a general grant of authority to local entities to adopt parking resolutions tailored to meet local needs. The trial court ruled that section 22507, as amended, is broad, permissive and does not require the City to adopt measures in favor of either or both merchants and residents. The trial court concluded that the challenged resolution is consistent with the provisions of section 22507, when the statute is read as a whole.

The trial court acknowledged that its decision is "extremely harsh to petitioners, [but the trial court] cannot determine that it was arbitrary and/or capricious." The trial court found that the record contained evidence to support the six evidentiary findings required by Beverly Hills Municipal Code former section 7-3.202 to support adoption of the resolution.

The trial court denied Friedman's request for a writ and sustained the City's demurrers to certain other causes of action without leave to amend and dismissed the remaining causes of action. The trial court entered its final judgment in favor of the City and this appeal ensued from the judgment.

## DISCUSSION

■ May the City restrict parking only to residents pursuant to section 22507? ■ Interpretation of a statute presents questions of law for this court to decide. (*Gardiner Solder Co.* v. *SupAlloy Corp., Inc.* (1991) 232 Cal.App.3d 1537, 1541 [284 Cal.Rptr. 206].) The fundamental rule of statutory construction is to ascertain and effectuate the intent of the Legislature in enacting the statute. (*City of San Jose* v. *Superior Court* (1993) 5 Cal.4th 47, 54 [19 Cal.Rptr.2d 73, 850 P.2d 621].) In construing section 22507, we read it as a whole and give significance to every word in it. (5 Cal.4th at p. 54; *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 478 [156 Cal.Rptr. 14, 595 P.2d 592].) We construe its words in their context and harmonize them according to their ordinary, common meaning. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d

836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) Where a statute is theoretically capable of more than one construction, we choose the one which most comports with the intent of the Legislature. (*Ibid.*) We consider the consequences which would flow from each interpretation and avoid constructions which defy common sense or which might lead to mischief or absurdity. (*Ibid.*; *Gardiner Solder Co., supra,* at p. 1542.) By doing so, we give effect to the legislative intent even though it may be inconsistent with a strict, literal reading of the statute.

■ "The streets of a city belong to the people of the state, and every citizen of the state has a right to the use thereof, subject to legislative control." (*Ex Parte Daniels* (1920) 183 Cal. 636, 639 [192 P. 442, 21 A.L.R. 1172]; accord, *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 549-550, 553 [183 Cal.Rptr. 73, 645 P.2d 124].) The right of control over street traffic is an exercise of part of the sovereign power of the state. Local ordinances regulating traffic which are inconsistent with general state laws are invalid. (*Ex Parte Daniels, supra,* at p. 639; *Rumford, supra,* at pp. 549-550, 553; *City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 753 [154 Cal.Rptr. 374].)

The regulation of parking on public streets, as an adjunct to traffic regulation, is similarly preempted by state law. (*County of Los Angeles* v. *City of Alhambra* (1980) 27 Cal.3d 184, 192-193 [165 Cal.Rptr. 440, 612 P.2d 24]; *Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558 [11 Cal.Rptr. 340]; *Bentley* v. *Chapman* (1952) 113 Cal.App.2d 1, 3 [247 P.2d 575].) Nonetheless, the regulation of traffic upon a public street is of special interest to the people of a municipality. (*Ex Parte Daniels, supra,* 183 Cal. at p. 639; *City of Lafayette* v. *County of Contra Costa, supra,* 91 Cal.App.3d at pp. 753-754.) Because of the plenary, preemptive power of the state over such matters, "[s]tatutory amendments take on an added significance where the Vehicle Code is concerned." (*Barajas* v. *City of Anaheim* (1993) 15 Cal.App.4th 1808, 1815 [19 Cal.Rptr.2d 764].) We consider the meaning of section 22507, as amended, with the foregoing rules in mind.

■ The first sentence of section 22507 states, in pertinent part, "Local authorities may, by ordinance or resolution, prohibit or restrict the . . . parking . . . of vehicles . . . on certain streets or highways, or portions thereof, during all or certain hours of the day." The first sentence of section 22507 provides a broad, general grant of power to local entities to regulate the parking of vehicles, even though it does not expressly provide for preferential parking privileges and permits.

The Legislature amended section 22507 to expressly grant local government entities the power to issue preferential parking permits. The second

sentence of section 22507 reads, "The ordinance or resolution may include a designation of certain streets upon which preferential parking privileges are given to residents and merchants adjacent to the streets for their use and the use of their guests, under which the residents and merchants may be issued a permit or permits which exempt them from the prohibition or restriction of the ordinance or resolution."

By referring to the ordinance or resolution permitted by the first sentence, the second sentence of section 22507 clarifies the initial grant of power to prohibit or restrict parking. It does so by stating that such an ordinance or resolution may provide for the issuance of preferential permits. The legislative intent of the amendment is to help assure that parking space is readily available to those most affected in a local area.

The last sentence of section 22507, added in 1980, reads, "A local ordinance or resolution adopted pursuant to this section may contain provisions which are reasonable and necessary to ensure the effectiveness of a preferential parking program." The import of the words of this later amendment to the statute is to give localities substantial power to tailor preferential parking programs to meet local circumstances.

The language of section 22507, harmonized and read as a whole, shows that the state does not desire to micromanage local parking circumstances. Instead, the statute shows that the state has decided to turn over regulation of parking minutiae to localities. Localities are best able to understand and respond to local parking problems. The initial grant of power in section 22507 broadly empowered localities to regulate parking within their jurisdictions. The subsequent statutory amendments to section 22507 have expanded rather than restricted the powers accorded local government over parking matters. These amendments are especially significant because they concern a Vehicle Code provision, which is subject to preemption by the state. (*Barajas* v. *City of Anaheim, supra,* 15 Cal.App.4th at p. 1813.)

Friedman contends that we must construe literally the words "residents *and* merchants" in the second sentence of the statute so as to preclude local entities, such as the City, from issuing permits only to residents. The addition of the last sentence of section 22507, coupled with the broad grants of power afforded local government by the first two sentences, dissuades us from such a narrow reading of the second sentence.

█ Words do not have fixed meanings; they are symbols of thought whose meanings vary depending upon the context and circumstances in which they are used. (*Pennisi* v. *Department of Fish & Game* (1979) 97

Cal.App.3d 268, 272-273 [158 Cal.Rptr. 683].) It is our duty to construe statutory language so as to promote rather than defeat the objective of the law and the evils to be remedied thereby. (*Id.* at p. 273; *City of San Jose* v. *Superior Court, supra,* 5 Cal.4th at p. 54.)

■ Generally, it is not our function to rewrite unambiguous language in a statute. When it appears, however, that to effectuate the purpose or intent of a statute the use of the word "or" rather than the word "and" is required, our Supreme Court tells us that we may rectify the apparent error by judicial construction. "The inadvertent use of 'and' where the purpose or intent of a statute seems clearly to require 'or' is a familiar example of a drafting error . . . ." (*People* v. *Skinner* (1985) 39 Cal.3d 765, 775-776 [217 Cal.Rptr. 685, 704 P.2d 752]; see also *People* v. *Butler* (1978) 81 Cal.App.3d Supp. 6, 8 [146 Cal.Rptr. 856]; *People* v. *Wright* (1955) 131 Cal.App.2d Supp. 853, 862 [281 P.2d 384].) ■ The facts of this case illustrate the need to read "and" as "or" in section 22507.

The purpose of section 22507 is to turn over parking regulations to local government. The statute expressly gives local authorities the power to prohibit or restrict parking, and to adopt provisions in preferential parking programs which are reasonable and necessary to ensure that they are effective. If we read the second sentence literally it would thwart this goal and require the City to restrict parking to both residents and merchants in all circumstances. This would be an absurd reading of section 22507, which would frustrate the intent of the Legislature in enacting and amending it.

Strict construction does not mandate unreasonable or absurd interpretations which frustrate the apparent intent of the Legislature. (See *People* v. *Butler, supra,* 81 Cal.App.3d at Supp. p. 8; *People* v. *Wright, supra,* 131 Cal.App.2d at pp. Supp. 861-862.) The Legislature intended to allow the City to restrict parking to residents or merchants or both, as warranted by the circumstances.

*Boccato* v. *City of Hermosa Beach* (1984) 158 Cal.App.3d 804 [204 Cal.Rptr. 727] is the only case we have found which specifically discusses the preferential parking provisions of section 22507. In that case, Hermosa Beach established a preferential permit parking program for persons living or working in two designated areas of the city. Restrictions on public parking applied to both areas during the summer months. During the rest of the year, only the area closest to the beach was restricted to residents and workers with permits.

Boccato, a merchant in a designated area, sued Hermosa Beach regarding the restrictions. He argued that section 22507 requires ". . . the preferential

parking exemption to be limited to the street *immediately* adjacent to the residence or business establishment." (*Boccato v. City of Hermosa Beach, supra,* 158 Cal.App.3d at pp. 810-811, italics added.) The Court of Appeal disagreed. It stated that such an interpretation ". . . would prohibit permit parking by a resident in a space around the corner or down one block from his residence." (*Ibid.*) The evidence at trial established that such a restriction would not resolve the parking problems in the area and would make the program unmanageable. "To construe section 22507 to require this absurd consequence is unreasonable." (*Ibid.*) Accordingly, the Court of Appeal interpreted the word "adjacent" in section 22507 to require only "general adjacency," thereby allowing permittees to park anywhere within the district. (158 Cal.App.3d at pp. 810-811.)

Boccato also asserted that residents in one zone should not be allowed to purchase permits in the other zone of the district. The Court of Appeal again disagreed with Boccato. It ruled that the provision to ease the restrictions in one area of the district during the winter months was reasonable and necessary to ensure the effectiveness of the program. It concluded that the resolution as a whole was reasonably tailored to meet the needs of those in the area. The court found the resolution consonant with the provisions of section 22507.

We agree with the *Boccato* court that section 22507 must be read to provide localities with flexibility and power to adopt ordinances and resolutions which are reasonably intended and designed to reduce severe local parking problems.

After the parties here reached an impasse, the City considered the evidence provided by studies, reports and hearings. The City determined that the small island of merchants represented by Friedman sought parking privileges which would, effectively, displace the greater parking needs of surrounding residents. By adopting a preferential parking program for residents only, the City carried out the express legislative mandate to place provisions in preferential parking resolutions which are reasonable and necessary to ensure the effectiveness of a preferential parking program. If the City had adopted a resolution to provide permits to both merchants and residents, it would have defeated the purpose of preferential parking embodied by the statute.

In *People* ex rel. *Dept. of Pub. Wks.* v. *Presley* (1966) 239 Cal.App.2d 309, 315 [48 Cal.Rptr. 672], appellants argued that in erecting their apartment building and relying upon a city's long-standing policy to permit unlimited curb parking, they had acquired a prescriptive right thereto. The *Presley*

court disagreed. It pointed out that sections 22506 and 22507 expressly authorized local authorities to prohibit or restrict parking—a legitimate exercise of regulatory police power. The historical parking situation was "permissive and existed only at sufferance by the city." (*Presley, supra,* at pp. 315, 316.) The same rule applies here, especially after the amendments to section 22507.

### Evidence Supporting the Findings in the Resolution

█ Friedman asserts there is no substantial evidence to support the findings the City made before it adopted the instant resolution. █ Because the resolution regards a political matter of public policy affecting the public at large, and because the hearing held was not required, the resolution is quasi-legislative in nature. (See generally, *Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448 [85 Cal.Rptr. 809, 467 P.2d 537].) We review its enactment pursuant to Code of Civil Procedure section 1085. Our inquiry is limited to whether the decision was "arbitrary, capricious or entirely lacking in evidentiary support." (*Bunnett* v. *Regents of University of California* (1995) 35 Cal.App.4th 843, 849 [41 Cal.Rptr.2d 567]; *Shapell Industries, Inc.* v. *Governing Board* (1991) 1 Cal.App.4th 218, 230-231 [1 Cal.Rptr.2d 818].)

█ Beverly Hills Municipal Code former section 7-3.202 required that petitioner meet six conditions. Friedman argues that there is no evidentiary support for four of the six conditions. Those four conditions are: 1. whether there is commuter interference with residential use of parking spaces; 2. whether there is a shortage of reasonably available and convenient residential parking spaces about the zone; 3. whether the displacement of commuter vehicles from the proposed zone will unduly impact the surrounding residential area; and 4. whether there are feasible alternatives.

### Commuter Interference and Shortage of Spaces

The City conducted two surveys which established that an average of 70 percent of the eighteen spaces at issue were occupied by nonresidential vehicles. At times, upwards of 94 percent of the available spaces were so used. Nearby residential driveways were partially blocked by parked cars and guests of residents frequently could not find any parking on streets adjacent to the residences. The parking surveys and the comments of surrounding residents provide substantial evidence that there is a shortage of reasonably available and convenient residential parking spaces in the area of the zone.

### Impact of Displacing Commuter Vehicles

Because the district provides for only 18 spaces, the number of displaced vehicles would be insignificant. Nearly two-thirds of commuter vehicles

park no more than two hours in a parking space; about 40 percent park no more than one hour. On average, only about 11 commuter vehicles would be displaced into the surrounding area due to the preferential parking zone.

### Feasibility of Alternatives

The record documents the lengthy, agonizing and failed attempts between the parties to find feasible alternatives. Apparently there is no reasonable alternative which is feasible or practical to eliminate the problem. Substantial evidence supports all six conditions.

The judgment is affirmed. The parties are to bear their own costs.

Stone (S. J.), P. J., and Yegan, J., concurred.