[No. B002087. Second Dist., Div. One. May 16, 1984.]

ROBERT BOWMAN, Plaintiff and Appellant, v.
BOARD OF PENSION COMMISSIONERS OF THE CITY LOS
ANGELES, Defendant and Respondent.

938

**COUNSEL**

Lewis, Marenstein & Kadar and Michael T. Roberts for Petitioner and Appellant.

Ira Reiner, City Attorney, Siegfried O. Hillmer, Assistant City Attorney, Beverley E. Mosley and Kristi Lousteau, Deputy City Attorneys, for Defendant and Respondent.

**OPINION**

**SPENCER, P. J.—**

### INTRODUCTION

Petitioner appeals from a judgment and order denying his petition for writ of mandate.

### STATEMENT OF FACTS

Petitioner joined the Los Angeles Fire Department on July 3, 1951; he had attained the rank of fire captain by May 1, 1980, when he filed an application for a disability pension pursuant to Section 190.12 of the Los Angeles City Charter.

Petitioner's initial application for a disability pension was heard by respondent, Board of Pension Commissioners for the City of Los Angeles (the Board), on January 8, 1981. The Board determined that petitioner was capable of performing the duties to which he had previously been assigned; petitioner's application was therefore denied.

Evidence introduced at the disability hearing included several medical reports. Dr. William Kiblinger, an orthopedist, reported that petitioner suffered from degenerative disc disease of the cervical and lumbar spine of a minimal degree which was compatible with petitioner's age and that petitioner's complaints were not justified inasmuch as they could not be explained on an organic basis. Dr. J. H. Abramson, an orthopedist, diagnosed petitioner's condition as residuals of recurrent sprains and strains of the cervical, dorsal and lumbar spine and recommended that petitioner might be able to do some type of sedentary work. Dr. John J. Jacobs, a neurologist, diagnosed petitioner's condition as a generalized musculoskeletal system complaint. In addition, Dr. Sachs testified that petitioner was able to return to full duty.

On February 6, 1981, subsequent to petitioner's initial disability hearing, Dr. H. Leon Brooks, an orthopedist, prepared an extensive report of petitioner's condition. On page 6 of his report, Dr. Brooks noted, "The patient also has pain in his low back, which is aggravated by prolonged sitting, standing, or driving. Walking, going up and down stairwells, as well as stooping, bending or squatting, will aggravate the pain." Dr. Brooks observed, "Patient appears to be in significant discomfort, particularly when getting on and off the examination table. He sits holding his head immobilized because of pain that he experiences in motion."

Having examined petitioner, Dr. Brooks noted petitioner's spinal flexion and extension were both "half normal"; X-rays of petitioner's cervical spine and shoulders showed advanced degenerative changes in the joints. According to Dr. Brooks, petitioner "while employed as a fire fighter for the Los Angeles Fire Department, had been exposed to continuous trauma from 7/3/51 to 4/25/80, which led to his present disability . . . . In terms of his neck and both shoulders, he has pain which is constant and moderate, becoming severe with any activities such as lifting of weights in excess of 10 pounds, any pushing, pulling, or grasping, or any overhead work . . . . [¶] In terms of his low back, he remains with pain which is constant and moderate, becoming severe with any bending, any stooping, sitting for more than 15 minutes, or standing for more than 15 minutes at a time . . . . [¶] [I]t would be my recommendation that this patient be restricted to a semi-sedentary type of occupation which will allow him to sit and stand and, in addition, an occupation that would allow him to lie down occasionally . . . provision should be made for him to receive lifetime medical treatment to his neck, low back, and upper and lower extremities in the form of physical therapy, analgesics, and anti-inflammatory agents, as well as other modalities of treatment, including the use of a transcutaneous nerve stimulator, bracing, and epidural steroids, which will be of benefit to him for the relief of his exacerbations of pain."

Petitioner filed a petition for a writ of mandate requesting that the superior court order the Board to grant petitioner's application for disability pension. The court exercised its independent judgment and concluded on June 25, 1981, that the Board had not abused its discretion by determining that petitioner was not disabled. Dr. Brooks' medical report was not presented to nor considered by the court, however, inasmuch as it had not been available at the time of the Board's initial determination.

Petitioner's counsel "contacted immediately the liason for the fire department and asked if [petitioner] could return, and they told [counsel] he would have to be evaluated by work fitness . . . ." An evaluation examination was performed on October 13, 1981; the report of that examination, published October 23, 1981, included the recommendation that petitioner "work light duty only and be restricted from driving more than 2-3 hours a day or lifting over 25-30 pounds. [¶] These restrictions appear to be permanent." According to petitioner's counsel, circulars were then sent "throughout the department to see if light duty assignments were available."

On February 2, 1982, petitioner requested permission pursuant to Board rule 4.15b to reapply for disability pension. A duty position petition circulated throughout the fire department on June 16th and 17th, 1982. The

petition indicated that petitioner's duties were restricted as follows: "No full fire fighting duty," "no lifting over 30 pounds," and "2 to 3 hours of driving maximum per day." Response to the petition indicated the absence of any position suitable for petitioner.

On August 12, 1982, petitioner was retired by the fire department. A service pension was authorized.

Petitioner's application to reapply for disability benefits pursuant to Board rule 4.15b was denied on September 30, 1982. Among the evidence introduced for the Board's consideration was the work fitness evaluation of October 23, 1981, the duty position petition of June 1982, Dr. Brooks' report, prepared in February of 1981 and the conclusion reached by Dr. Sachs following his reexamination of petitioner.

Petitioner filed a petition for writ of mandate, asking the court to vacate the Board's decision on December 10, 1982; the court denied the petition on April 21, 1983.

## CONTENTION

For the following reasons, petitioner contends the trial court abused its discretion by refusing to issue a writ of mandate ordering the Board to set aside its decision denying petitioner the right to reapply for a disability pension:

A. The Board's finding that petitioner's condition had not deteriorated subsequent to the date of his first application is not supported by the evidence, and

B. Reapplication is warranted by the fact that, due to his medical condition, petitioner has been relegated to light or sedentary duties and his employer has forced him to accept a service pension rather than make such a position available to him.

## DISCUSSION

Petitioner contends the trial court abused its discretion by refusing to issue a writ of mandate ordering the Board to allow petitioner to reapply for a disability pension. We agree.

■ Initially, we note that the issuance of a writ of mandate depends upon a showing that the respondent owed "a clear present duty to perform the act sought." (*Brandt* v. *Board of Supervisors* (1978) 84 Cal.App.3d

598, 600-601 [147 Cal.Rptr. 468].) Moreover, the judiciary will not interfere with the exercise of a board's authority absent the demonstration of an "arbitrary disregard of the law or flagrant abuse of discretion." (*Id.*, at p. 601.)

In the instant case, the issue to be determined is whether the Board violated a present duty imposed upon it at the time it refused petitioner's request for permission to reapply for disability benefits. In the absence of such duty, we must determine whether the Board's decision represented an abuse of discretion.

The Board's determination of whether to grant a reapplication for disability benefits is governed by Board rule 4.15b. Paragraphs two and four of rule 4.15b are of particular import to the case at bar; the former addresses criteria which establish an applicant's automatic right of reapplication;[1] the latter empowers the Board to exercise its discretion by allowing reapplication where the prerequisites of paragraph two have not been met.[2]

 A review of the medical data available before and after petitioner's initial disability benefit hearing, as well as cognizance of the conclusion reached by the Board at that hearing provides ample support for our conclusion, i.e., the Board clearly violated its present duty pursuant to Board rule 4.15b, paragraph two, to grant petitioner's request for permission to reapply for disability benefits. ██ Our review of the evidence is governed by the substantial evidence rule;[3] we assume the existence of

---

[1]Board rule 4.15b, paragraph two, provides: "that a new application is always in order . . . if there is intervening between a previous denial and the date of the new application . . . substantial deterioration or aggravation of an injury or illness upon which a previous application was based."

[2]Board rule 4.15b, paragraph four, provides in pertinent part that the applicant may "present a statement as to the reasons of his or her new application and will schedule for its consideration as a regular agenda item . . . ."

[3]The right to reapply for disability benefits pursuant to Board rule 4.15b, paragraph two, is automatic upon demonstration of a substantial deterioration in an applicant's condition; inasmuch as the right is automatic, it is possessed by an individual who satisfies the medical criteria. Those rights which are "already possessed" are "vested." (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242].) The right to reapply for a disability pension once vested is also "fundamental" within the meaning of *Bixby* v. *Pierno;* the trial court was therefore entitled to exercise its independent judgment as it reviewed the record of the Board's action. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395 [188 Cal.Rptr. 891, 657 P.2d 383]; *Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745 [129 Cal.Rptr. 289, 548 P.2d 689].) Our review of the trial court's decision, however, is limited to a determination of whether, disregarding all evidence to the contrary, the decision is supported by substantial evidence, (*Golde* v. *Fox* (1979) 98 Cal.App.3d 167, 174 [159 Cal.Rptr. 864]; *Price* v. *Price* (1952) 114 Cal.App.2d 176 [249 P.2d 841].)

every fact necessary to support the trial court's judgment and resolve all doubts in respondent's favor. (*Golde* v. *Fox, supra,* 98 Cal.App.3d 167, 174; *Price* v. *Price, supra,* 114 Cal.App.2d 176.)

■ This court was not created, however, merely to echo the determinations of the trial court. A decision supported by a mere scintilla of evidence need not be affirmed on review. (*Oldenburg* v. *Sears, Roebuck & Co.* (1957) 152 Cal.App.2d 733, 741 [314 P.2d 33].)

■ According to Board rule 4.15b, paragraph two, the right to reapply for disability benefits is automatic upon demonstration of a "substantial deterioration" in the applicant's condition occurring subsequent to the denial of the initial claim. The Board denied petitioner's request to reapply for benefits under the parameters of paragraph two, inasmuch as it did not find a "substantial deterioration" in petitioner's condition. We must assess the evidence, therefore, to determine whether sufficient evidence exists to negate a "substantial deterioration" in petitioner's condition following the initial denial of his request for a disability pension. If there is no evidence to negate such deterioration and if evidence supports a finding that petitioner's condition did deteriorate, however, we need not affirm. Moreover, if such is the case, petitioner has an absolute right to reapply for disability benefits and is entitled to a hearing on his reapplication. (Board rule 4.15b, par.(2).)

The evidence in the instant case does not negate a deterioration in petitioner's condition. To the contrary, the record contains substantial evidence which supports a finding that petitioner's condition deteriorated subsequent to his initial disability hearing.

The only evidence which the Board could have relied upon to negate a change in petitioner's condition was the report prepared by Dr. Handelman for the initial hearing. In his report, Dr. Handelman concluded that petitioner should be restricted from heavy work and normal firefighting duties. The Board refused to accept Dr. Handelman's report as indicative of a change in petitioner's condition only because there had been no change in Dr. Handelman's opinion. The Board's reasoning is specious, however, inasmuch as petitioner's condition at the time his initial petition was denied was defined by the Board's *conclusion,* rather than by any one of the various medical opinions presented as evidence, for the opinions presented at that time ranged from a recommendation that petitioner be relegated to sedentary work to a conclusion that petitioner's complaints were not justified. The characterization of petitioner's present condition and the determination of

whether a "substantial deterioration" had occurred following the denial of his initial petition, however, requires the comparison of medical data obtained subsequent to the original hearing with the *conclusion* reached by the Board after its assessment of evidence presented at the original hearing, rather than a comparison of evidence presented at both hearings.

In actuality, the Board's pronouncement at the close of the first hearing directly negated the content of Dr. Handelman's report, for the Board concluded at that time that petitioner could return to his previous position and full duty. Inasmuch as the Board chose not to rely on Dr. Handelman's opinion at the original hearing, its reliance thereon at the present hearing for the purpose of negating a deterioration in petitioner's condition can only be characterized as inequitable, for "One must not change his purpose to the injury of another." (Civ. Code, § 3512.)

As noted *ante,* the Board concluded at the close of petitioner's initial disability pension hearing that petitioner could return to full duty. All medical evidence obtained following that hearing, however, established the necessity for restrictions and limitations on petitioner's activities.

Two medical reports in particular establish clearly that, contrary to the Board's earlier conclusion, petitioner was not able to resume full work responsibilities. For example, Dr. Sachs testified at the reapplication hearing that petitioner was fit for light duty only. Even more compelling, however, was Dr. Brooks' report, for Dr. Brooks noted "a marked decrease in the disc space" in petitioner's spine, degenerative changes in petitioner's joints, extension and flexion of the cervical spine limited to half the normal range and a complete inability to rotate the lumbar spine either to the left or to the right.

In addition, the record contained the work-fitness evaluation, prepared after the Board's initial conclusion, as a prerequisite to petitioner's return from disability. The evaluation specified that petitioner "work light duty only, and be restricted from driving more than 2-3 hours a day or lifting over 25-30 pounds. [¶] These restrictions appear to be permanent."

Moreover, we cite the department's unsuccessful attempts to locate a suitable light duty assignment for petitioner. Inasmuch as *no* work suited to

petitioner's condition was found within the entire work force of the fire department, we can only conclude that petitioner's condition, at the time of the work fitness evaluation, was incompatible with his return to full duty as a fire captain.[4] Such incompatability is clearly contrary to the Board's original conclusion and must represent a "substantial deterioration" in petitioner's condition.

In view of the above, the evidence is clearly insufficient to support a finding that petitioner's condition did not deteriorate subsequent to his initial disability pension hearing. To the contrary, the evidence is sufficient to sustain a finding that petitioner's condition did substantially deteriorate. Given our finding, the Board's denial of petitioner's request for permission to reapply for disability benefits was clearly erroneous. Pursuant to paragraph two of Board rule 4.15b, petitioner was entitled to the automatic grant of his request.

■ We reach the identical conclusion regardless of whether we consider the impropriety of denying petitioner's automatic right to reapply for a disability pension pursuant to paragraph two of Board rule 4.15b or the impropriety of denying petitioner's reapplication pursuant to the discretionary powers vested in the Board by paragraph four, for the Board is required by section 190.12, subdivision (a) of the Charter of the City of Los Angeles to order the retirement "from further active duty as a Department Member" of a "System Member whom the Board shall determine has become physically or mentally incapacitated by reason of injuries received or sickness caused by the discharge of the duties of such person as a Department Member, and who is incapable as a result thereof from performing his duties." The criteria giving rise to the Board's duty to grant disability benefits pursuant to section 190.12, therefore, include determinations of: (1) whether a system member has become physically or mentally incapacitated, (2) whether such physical or mental incapacitation results from injuries received or sickness caused by the discharge of the member's duties and (3) whether the member is incapable as a result of the work-related incapacity of performing his duties.

In the determination of whether the Board owes a duty to grant a disability pension, the Board must decide whether a system member has become physically or mentally incapacitated. The *degree* of incapacity warranting the

---

[4]We find no merit in the Board's assertion that petitioner forfeited his right to a disability pension by failing to actively pursue a light duty placement, for the transcript of the September 30, 1982, hearing clearly reveals that petitioner would have been permitted to return to work only "If he were to have returned and had been able to return to full firefighting duty without any restrictions." We cannot agree that the forfeiture of a right can be predicated upon the impossible.

grant of a disability pension is defined, however, by the third factor, i.e., whether the physical or mental incapacity results in the system member's inability to perform his duties.

In the instant case, petitioner was forced to accept mandatory retirement following the department's unsuccessful attempt to locate a position suited to his physical condition. The department concluded that its inability justified petitioner's mandatory retirement. While mandatory retirement may have been appropriate, a disability pension awarded pursuant to section 190.12, rather than a service pension, was in order, for petitioner's work-related physical incapacity did not render him unable to perform his duties.

There is no doubt that petitioner's condition formed the impetus for the work placement search. It is also uncontroverted that no suitable placement was located. We direct respondent's attention, therefore, to the fact that petitioner's inability to perform "his duty," that light duty to which petitioner was relegated by the department's own work fitness evaluation, resulted not only from the department's unsuccessful placement search, but from his physical incapacity as well, for the placement search would have been unnecessary absent the physical disability.

In addition to the authority inherent in section 190.12 of the city charter, we cite judicial interpretations of similar provisions to support our conclusion, for respondent's duty is defined not only by the city charter, but by judicial interpretations of similar pension provisions as well. (*Newman* v. *City of Oakland Retirement Bd.* (1978) 80 Cal.App.3d 450, 457 [145 Cal.Rptr. 628].) In *Barber* v. *Retirement Board* (1971) 18 Cal.App.3d 273 [95 Cal.Rptr. 657], for example, the court considered the disability pension provision found in the Charter of the City of San Francisco. There the court held that the absence of suitable placement necessitated by an individual's physical condition and rank was cause for mandatory retirement. (*Ibid.*) The applicable retirement pension, however, was not, as respondent contends, a service pension. Rather, the applicable pension was that provided in the event of disability, for an individual whose retirement is necessitated by a work-related physical disability is entitled to a disability pension. (*Ibid.;* see also *Craver* v. *City of Los Angeles* (1974) 42 Cal.App.3d 76, 80 [117 Cal.Rptr. 534].)

There can be no doubt, section 190.12 of the Los Angeles City Charter demands a similar entitlement. Thus, where the fire department is unable to locate a position suited to an employee's rank and work-related physical condition, a disability pension is warranted. The Board's refusal to exercise its discretionary power to permit petitioner to reapply for a disability pension, therefore, can only be characterized as a " ' " "manifest miscarriage of

justice," ' " and hence, an abuse of its discretion. (*Ford* v. *State of California* (1981) 116 Cal.App.3d 507, 516 [172 Cal.Rptr. 162]; quoting from *Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].) ▮ In such instances, our courts have long upheld the propriety of a writ of mandate as an appropriate remedy to control the abuse of discretion inherent in an administrative decision. (*Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 639 [12 Cal.Rptr. 671, 361 P.2d 247]; *Fidelity & Cas. Co. of New York* v. *Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 1001, 1009 [163 Cal.Rptr. 339].)

The judgment is reversed and the cause remanded for the issuance of a writ of mandate directing the Board to grant petitioner's request for a hearing on his reapplication for a disability pension.

Hanson (Thaxton), J., and Dalsimer, J., concurred.

On June 6, 1984, the opinion was modified to read as printed above.