[Civ. No. 24371. Third Dist. Dec. 12, 1985.]

RITA MILLER et al., Plaintiffs and Appellants, v.
CALIFORNIA COMMISSION ON THE STATUS OF WOMEN,
Defendant and Respondent.

**COUNSEL**

Thomas M. Burton and Burton, Brunt & Robbins for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, M. Anne Jennings and Marian M. Johnston, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**SPARKS, J.**—Plaintiffs Rita Miller et al. (collectively Miller), in an amazing display of chutzpah,[1] seek to recover their attorneys' fees from defendant California Commission on the Status of Women (Commission) in the trial court after this court had *reversed* a judgment in Miller's favor in the

---

[1]See *People* v. *Whigam* (1984) 158 Cal.App.3d 1161, 1167 [205 Cal.Rptr. 227], for a description of the "chutzpah" principle.

most recent appeal in this case. (*Miller* v. *California Com. on Status of Women* (1984) 151 Cal.App.3d 693 [198 Cal.Rptr. 877] [*Miller II*].) Not surprisingly, the trial court denied the request. Miller appeals. We affirm.

BACKGROUND

To appreciate the absence of any basis for the requested fees, we need to reconstruct—briefly—the evolution and extinction of this case. The action was originally filed in 1976, challenging the Commission's expenditure of public funds for the promotion of the Equal Rights Amendment to the United States Constitution (an issue subsequently mooted by the failure of the amendment to achieve ratification). The superior court granted the Commission's motion for summary judgment. We reversed on appeal. (*Miller* v. *Miller* (1978) 87 Cal.App.3d 764 [151 Cal.Rptr. 197] [*Miller I*].) Citing *Stanson* v. *Mott* (1976) 17 Cal.3d 206 [130 Cal.Rptr. 697, 551 P.2d 1], we first queried whether the Commission was engaging in permissible legislative lobbying (which we assumed was available to state agencies (*Miller I, supra,* at p. 767, fn. 2), or whether it was engaged in unauthorized election campaigning. The resolution of the inquiry, we opined, depended on the audience at whom the activity was aimed. (*Id.,* at pp. 767-768.) Finding that the plaintiffs sufficiently showed the Commission's activities were aimed at the electorate, we then turned to the determination whether such activity had " 'clear and explicit' " legislative authorization. (*Id.,* at p. 771.) Finding none, we reversed the grant of summary judgment, remanding for the trial court to determine two questions of fact: whether public funds were used for these activities, and whether these activities were promotional or were informational. (*Id.,* at pp. 771-772.)

After trial, the lower court specifically found the creation of the Commission did not violate any constitutional doctrines and the activities of the Commission did not violate the free speech or civil rights of any plaintiff. The court further found, however, that the authorizing statutes for the Commission only permitted it to disseminate information in a neutral and impartial manner; so the court issued an injunction narrowly delineating the scope of the Commission's activities. The court also granted attorneys' fees, reserving jurisdiction to determine the amount at a later time. Shortly thereafter, in apparent response to the trial court judgment, the Legislature enacted Government Code section 8246, the text of which is set out in the margin.[2] On appeal, we reversed the judgment. Since the basis of *Miller I*

---

[2]Government Code section 8246 reads: "(a) The commission is expressly authorized to inform the Legislature of its position on any legislative proposal pending before the Legislature and to urge the introduction of legislative proposals. [¶] (b) The commission is expressly authorized to state its position and viewpoint on issues developed in the performance of its duties and responsibilities as specified in this chapter. [¶] (c) This section is declaratory of existing law." (Stats. 1982, ch. 1118, § 1, p. 4042.)

was an absence of authorization, we held in *Miller II* that the enactment of such authorization removed any statutory foundation for the plaintiffs' judgment (*Miller II*, 151 Cal.App.3d at pp. 697-698) and that such authorization for advocacy or promotion in general was not constitutionally infirm (*id.*, at pp. 699-702), an issue reserved in the earlier appeal. (*Miller I*, 87 Cal.App.3d at p. 767, fn. 3.)

Several months after *Miller II*, the plaintiffs moved for attorneys' fees under Code of Civil Procedure section 1021.5 and 42 United States Code section 1988.[3] The trial court denied the motion.

### Discussion

Miller claims preliminarily that the trial court, having awarded fees before the second appeal, was without discretion to do anything other than determine the amount of the fees after the appeal because *Miller II* did not reach the issue of fees. No authority is cited for this absurd proposition.[4] Although we again intimate no view on the timing of the trial court's ruling on fees, the California Supreme Court noted in *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 637 [186 Cal.Rptr. 754, 652 P.2d 985], that a court's decision with regard to attorneys' fees is an inquiry which " 'cannot even commence until one party has "prevailed." ' " (Citing *White* v. *New Hampshire Dept. of Empl. Sec.* (1982) 455 U.S. 445 [71 L.Ed.2d 325 102 S.Ct. 1162].) Thus, it was entirely within the trial court's discretion to deny fees after Miller's initial victory turned to ashes.

A necessary prerequisite to recovery under Code of Civil Procedure section 1021.5 is the status of prevailing party. (*Residents Ad Hoc Stadium Com.* v. *Board of Trustees* (1979) 89 Cal.App.3d 274, 292 [152 Cal.Rptr. 585].) While it is not necessary for plaintiff to achieve a favorable final

---

[3] Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessary and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interests of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

42 United States Code section 1988 provides, in relevant part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

[4] Following the line of Miller's reasoning to its conclusion, had fees been awarded and determined before the appeal, they would be permitted to stand even if we reversed the case but for some reason expressed no opinion on the award of fees.

judgment to qualify for attorneys' fees (so long as the plaintiff's actions were the catalyst for the defendant's actions), there must be *some* relief to which the plaintiff's actions are causally connected. (*Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 352-353 [188 Cal.Rptr. 873, 657 P.2d 365]; *Boccato* v. *City of Hermosa Beach* (1984) 158 Cal.App.3d 804, 811-812 [204 Cal.Rptr. 727].)

Attempting to find some surviving edifice in the rubble of the case, Miller first claims a substantial benefit was conferred on the people of California through the opinion of this court in *Miller I,* which now assertedly stands as a protection from governmental propaganda. Such is hardly the case. While we would like to think that all our published opinions provide some benefit to the reader, *Miller I* merely restated existing law and found the Commission acted without benefit of express authority. Now that the Legislature has conferred that authority, *Miller I* does no more than echo *Stanson* v. *Mott, supra,* 17 Cal.3d 206.

Miller next claims that *Miller I* and the Legislature have confined the Commission to a neutral, nonpartisan role. There is not a scintilla of evidence in the record to indicate the Commission subscribes to this restraint on its powers, nor can we find support for this interpretation. The selective emphasis Miller places on the language of the newly enacted statute ignores its import: "[t]he commission is expressly authorized to inform the Legislature *of its position* on any legislative proposals" and "[t]he commission is expressly authorized to state *its position and viewpoint* on issues." (Our italics.) The Commission is thus given express authority to take a position, not merely rehash all the viewpoints extant in the community.

Finally, procedural success during the course of litigation is insufficient to justify attorneys' fees where the ruling is later vacated or reversed on the merits. (*Doe* v. *Busbee* (11th Cir. 1982) 684 F.2d 1375, 1380.)[5] *Miller I* simply reversed a summary judgment, leaving the plaintiffs "in a position no different from that they would have occupied if they had simply defeated the defendants' motion . . . in the trial court." (*Hanrahan* v. *Hampton* (1980) 446 U.S. 754, 758-759 [64 L.Ed.2d 670, 675, 100 S.Ct. 1987].) As for the subsequent trial court ruling in Miller's favor, the Legislature immediately acted constitutionally to reverse the trial court's confinement of the Commission to a neutral role which shows Miller's "success" was not an "effectuation of a fundamental constitutional or statutory policy." (*Woodland Hills Residents Assn., Inc.* v. *City Council*

---

[5]It is proper for California courts to look to federal precedent for interpretation of Code of Civil Procedure section 1021.5. (*Westside Community, supra,* 33 Cal.3d at p. 352, fn. 5.)

(1979) 23 Cal.3d 917, 939 [154 Cal.Rptr. 503, 593 P.2d 200].) The trial court did not abuse its discretion in denying fees under Code of Civil Procedure section 1021.5.

The discussion with respect to the absence of success under Code of Civil Procedure section 1021.5 negates with equal force any claim under the federal statute. ■ We need only add that the trial court explicitly found Miller's civil rights claims without merit; this is a sufficient reason to deny recovery under title 42 United States Code section 1988. (*Bunting* v. *City of Columbia* (4th Cir. 1981) 639 F.2d 1090, 1095.) The cases on which Miller would rely for an award of fees under the federal statute involve situations where the federal civil rights claims were not reached because there was a simpler or less important theory on which recovery could be given. (See *Woodland Hills Residents Assn., supra,* 23 Cal.3d at pp. 937-938.) Since there was no recovery here at all, that line of cases offers no succor to plaintiffs.

The judgment is affirmed.

Evans, Acting P. J., and Blease, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 27, 1986. Reynoso, J., did not participate therein.