[No. B016332. Second Dist., Div. Seven. June 26, 1987.]

MARIETTA KIMBLE, Plaintiff and Appellant, v.
BOARD OF EDUCATION OF THE CITY OF LOS ANGELES et
al., Defendants and Appellants.

1424

COUNSEL

Ron Apperson and Howard Friedman for Defendants and Appellants.

Lawrence B. Trygstad and Richard J. Schwab for Plaintiff and Appellant.

## OPINION

**LILLIE, P. J.**—Marietta Kimble filed a petition for writ of mandate (Code Civ. Proc., § 1085) to compel the Los Angeles City Board of Education

(board) and the Los Angeles Unified School District (district) to set aside their dismissal of plaintiff from her employment as a school teacher. Judgment was entered granting the petition. Both parties appeal.

## FACTS

Plaintiff was employed by the district as a teacher for approximately 17 years, beginning in 1968. On January 26, 1984, plaintiff received, by certified mail, a notice from the board of its intention to dismiss her. (Ed. Code, § 44932 et seq.)[1] Plaintiff did not open the envelope containing the notice and thus was unaware of her impending dismissal until March 6, 1984. On that date, at the school where she was teaching, a letter was delivered to plaintiff in her classroom informing her that she had been dismissed from her employment effective March 5. After reading the letter plaintiff consulted her union representative who told plaintiff she had been dismissed because she failed to request a hearing. On March 6 and again on March 12, 1984, plaintiff served on defendants written requests for a hearing on her right to continue as a permanent certificated employee of the district. Both requests were denied.

Plaintiff filed a petition for writ of mandate ordering defendants to reinstate her or grant her a hearing as to whether grounds exist for her dismissal. The petition alleged that when plaintiff received the notice of intention to dismiss she was suffering from a blood disorder and psychologically related problems; consequently, she did not open the envelope and read the notice, but even if she had done so, she would not have understood its meaning because of her physical and mental condition at that time. Defendants answered the petition denying its material allegations. In support of their respective positions the parties submitted depositions and declarations. No additional evidence was offered at the hearing. In its oral statement of decision (Code Civ. Proc., § 632) the trial court found that plaintiff "was imbalanced physically, and I am satisfied I have medical evidence to that effect; that by reason of that physical imbalance her body processes were

---

[1] Education Code section 44934 provides in part: "Upon the filing of written charges, duly signed and verified by the person filing them, with the governing board of the school district, or upon a written statement of charges formulated by the governing board, charging that there exists cause, as specified in Section 44932 or 44933, for the dismissal or suspension of a permanent employee of the district, the governing board may, upon majority vote . . ., give notice to the permanent employee of its intention to dismiss or suspend him or her at the expiration of 30 days from the date of service of the notice, unless the employee demands a hearing as provided in this article. . . ."

Section 44937: "In a dismissal or suspension proceeding initiated pursuant to Section 44934, if the employee does not demand a hearing by filing a written request for hearing with the governing board, he or she may be dismissed or suspended without pay for a specific period of time at the expiration of the 30-day period."

not functioning properly, which was disturbing her emotionally"; and that these circumstances were sufficient to relieve plaintiff of the consequences of her failure to seek a hearing within 30 days after service of the notice of intention to dismiss.

Judgment was entered ordering that a peremptory writ of mandate issue commanding defendants to set aside plaintiff's dismissal, reinstate plaintiff as a permanent certificated teacher, and place her on mandatory sick leave of absence for mental illness pursuant to Education Code section 44942.[2] Defendants appeal from the judgment. Plaintiff cross-appeals challenging the judgment insofar as it fails to award plaintiff attorney fees (Code Civ. Proc., § 1021.5) as requested in the petition.

DISCUSSION

I

DEFENDANTS' APPEAL

 Defendants contend the evidence does not support the findings that plaintiff's emotional disturbance excused her failure timely to request a hearing on her proposed dismissal.

 Where an appellant challenges the sufficiency of the evidence, his burden is a heavy one; he must show that there is no substantial evidence whatsoever to support the findings of the trier of fact. (*Horn* v. *Oh* (1983) 147 Cal.App.3d 1094, 1098 [195 Cal.Rptr. 720].) The substantial evidence rule provides that where a finding of fact is attacked on the ground it is not sustained by the evidence, the power of the appellate court begins and ends with a determination whether there is any substantial evidence, contradicted or uncontradicted, which supports the finding. (*Foreman & Clark Corp* . v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) An appellate court is without power to judge the effect or value of the evidence, weigh the evidence, consider the credibility of witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. (*Leff* v. *Gunter* (1983) 33 Cal.3d 508, 518 [189 Cal.Rptr. 377, 58 P.2d 740].) "This court was not created, however, merely to echo the determinations of the trial court." *(Bowman* v. *Board of Pension Commissioners* (1984) 155 Cal.App.3d 937, 944 [202 Cal.Rptr. 505].) While the trial court here was the sole arbiter of the facts, the question whether or

---

[2]The petition did not allege that plaintiff was entitled to the benefits of section 44942. However, in her supplemental points and authorities plaintiff argued that the district failed to comply with a mandatory duty to place her on sick leave rather than dismiss her. That issue was argued by the parties as though properly raised by the pleadings.

not there is substantial evidence to support the findings is a question of law. (*White* v. *State of California* (1971) 21 Cal.App.3d 738, 759 [99 Cal.Rptr. 58].) ██ "Substantial evidence means evidence which is 'of ponderable legal significance. Obviously, the word cannot be deemed synonymous with "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' [Citation.]" (*Hall* v. *Department of Adoptions* (1975) 47 Cal.App.3d 898, 906 [121 Cal.Rptr. 223].) ██ In determining the existence of substantial evidence the reviewing court does not limit its review to evidence favorable to the respondent, but looks to the entire record. (*Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873 [197 Cal.Rptr. 925].)

██ We have carefully read the entire record. Our review compels us to conclude that the record is devoid of substantial evidence to support the findings.

From January through October 1977, on recommendation of the district's physician Dr. Molly Bersin, plaintiff took a leave of absence from her teaching duties for what appeared to be stress. In February 1980, at the insistence of Dr. Bersin, plaintiff consulted Dr. Edmund Walker, a psychiatrist retained by the district. Dr. Walker's diagnostic impression was that plaintiff suffered from "psychoneurosis, depressive reaction"; in Dr. Walker's opinion plaintiff was not capable of carrying out her teaching duties because of her illness, but he felt the prognosis for her recovery was excellent. In November 1981 the principal of the school where plaintiff taught referred plaintiff to Dr. Sue Magara, a physician employed by the district, because the principal suspected plaintiff's problems in the classroom were caused by poor health; Dr. Magara sent plaintiff back to work because plaintiff denied having problems of any kind and was not on medication. In November 1982, at the request of another principal, plaintiff again consulted Dr. Magara. Noting that plaintiff was very pale, Dr. Magara sent her to a hospital for a blood count. The laboratory report came back showing that plaintiff was very anemic; her hemoglobin was only six grams, about half of normal. In Dr. Magara's opinion, plaintiff suffered from chronic anemia and her mental faculties were impaired in November 1982. Dr. Magara approved an illness leave for plaintiff so that she could build up her blood count, and told plaintiff she could return to work when her hemoglobin reached 11 grams. In November 1982 plaintiff consulted Dr. J. L. Ezell, a physician in private practice. Under Dr. Ezell's treatment, by December 29, 1982, plaintiff's hemoglobin rose to 11.7 grams. Plaintiff returned to work in January 1983. On June 3, 1983, Dr. Magara again examined plaintiff at the request of a principal concerned because of plaintiff's deteriorating performance in the classroom. On that occasion Dr. Magara did not check

plaintiff's blood count; she did not see plaintiff thereafter. On June 13, 1983, at the request of the employee health services of the district, plaintiff was given a follow-up psychiatric examination by Dr. Walker. The examination disclosed that plaintiff "is well oriented for time, place and person. Her remote and recent memory are intact. Her fund of general knowledge is intact. Her ability to calculate is well within the normal range." Dr. Walker wondered "whether we might not be dealing here with a so-called pseudo-neurotic schizophrenia in the early stages of its slow development," but conceded that to ascertain this it would be necessary to conduct detailed psychologic testing. In Dr. Walker's opinion, even in the absence of such testing plaintiff was unable to return to her regular classroom work and should see a psychiatrist regularly once a week for the next three or four months.

Attached to plaintiff's declaration as an exhibit was a letter dated July 20, 1984, from Dr. Ezell to plaintiff's counsel. In the letter Dr. Ezell stated that he last saw plaintiff on February 14, 1984; in his opinion plaintiff suffered from chronic anemia which "put her in the broad category of Organic Brain Psychosis or Dysfunction. I'm sure her mental faculties were down which includes judgement [sic], general intelegence [sic], memory ect [sic]."

In her deposition plaintiff was asked what physical and mental condition she had in January 1984 that prevented her from opening the envelope containing the notice of the district's intention to dismiss her. Plaintiff answered: "*No physical and mental condition existed. I didn't open—I didn't open it because I received a lot of mail and I don't open it ... [¶] I open most of my bills and—and most [of] the letters I open are from the reading associations.*" (Italics added.) Plaintiff also testified that she did not open the envelope containing the notice because she thought she knew what it contained, viz., a copy of a memorandum from Warren Juhnke, regional superintendent of schools, to Harry Handler, superintendent of schools, wherein Juhnke summarized his conference with plaintiff on January 3, 1984 and recommended to Handler that plaintiff be dismissed from service in the district. PL80

Defendants objected to the admission of Dr. Ezell's letter into evidence on the ground of lack of foundation. The trial court overruled the objection but conceded the letter was hearsay evidence (Evid. Code, § 1200) which was not admissible under any exception to the hearsay rule. (*Id.,* § 1220 et seq.) The court nevertheless admitted the letter on the ground the court had considered it in deciding to grant the petition, "and it would be dishonest at this point to sustain an objection to a document and refuse to consider it at all." Whatever the validity of such reasoning, the fact remains that the letter (as the court acknowledged) is hearsay and thus cannot be considered on this appeal as substantial evidence in support of the findings.

It must be ignored by us in our analysis of the sufficiency of the evidence. (See *Stevens* v. *Mostachetti* (1946) 73 Cal.App.2d 910, 912 [167 P.2d 809].)

■ Without Dr. Ezell's letter there is no substantial evidence that in January 1984 plaintiff suffered from a blood disorder and psychologically related problems, as alleged in the petition. Plaintiff was diagnosed in November 1982 as having chronic anemia; in Dr. Magara's opinion, that disease impaired plaintiff's mental faculties. However, plaintiff's hemoglobin count was normal by December 29, 1982, and the evidence does not disclose a recurrence of plaintiff's chronic anemia thereafter. The diagnosis of Dr. Walker based on his first examination of plaintiff, in 1980, does not indicate plaintiff's mental condition in 1984. (See *Board of Trustees* v. *Porini* (1968) 263 Cal.App.2d 784, 787, 790 [70 Cal.Rptr. 73].) Following his second examination of plaintiff, in June 1983, Dr. Walker expressed the opinion that plaintiff might have pseudoneurotic schizophrenia in its early stages, but did not attribute that mental disorder to chronic anemia or any other blood disease. The most telling blow to plaintiff's case, however, lies in her deposition testimony that she failed to open the envelope containing the notice of intention to dismiss not because of any physical or mental condition, but because she customarily did not open most of her mail or—an alternative explanation—because she thought she knew what was in the envelope. Such testimony in effect constitutes an admission of the untruth of the allegation that plaintiff did not open the envelope containing the notice of intention to dismiss because she suffered from a blood disorder and psychologically related problems.

Plaintiff based her claim for relief on the allegation that a blood disorder and related psychological problems prevented her from opening the envelope containing the notice, further alleging that even if she had opened the envelope she would not have understood the nature of the notice because of her physical and mental condition at that time. Plaintiff points to statements by doctors who examined her that she denied the existence of her condition. Such denial has nothing to do with competence or incompetence in opening envelopes received in the mail.

The trial court's finding that by reason of plaintiff's physical imbalance "her body processes were not functioning properly, which was disturbing her emotionally," is unsupported by substantial evidence. Accordingly, plaintiff is not entitled to any of the relief included in the writ of mandate which the judgment ordered to be issued.

## II

### PLAINTIFF'S CROSS-APPEAL

 Under Code of Civil Procedure section 1021.5,[3] an award of attorney fees is limited to the successful party. (*Residents Ad Hoc Stadium Com.* v. *Board of Trustees* (1979) 89 Cal.App.3d 274, 292 [152 Cal.Rptr. 585].) "[P]rocedural success during the course of litigation is insufficient to justify attorneys' fees where the ruling is later vacated or reversed on the merits." (*Miller* v. *California Com. on Status of Women* (1985) 176 Cal.App.3d 454, 458 [222 Cal.Rptr. 225].) It follows that plaintiff is not entitled to attorney fees under section 1021.5.

### DISPOSITION

That portion of the judgment ordering issuance of peremptory writ of mandate is reversed. In all other respects the judgment is affirmed. Defendants shall recover their costs on appeal.

Cole, J., concurred.*

**JOHNSON, J.**—I respectfully dissent from the portion of the majority opinion reversing the writ of mandate. Although I do not believe the trial court had the authority to order Ms. Kimble be placed on sick leave pursuant to Education Code section 44942, I do believe there was substantial evidence to support the finding emotional disturbance prevented Ms. Kimble from filing a timely request for a hearing. Therefore, I would modify the trial court's judgment to direct the respondents to treat Ms. Kimble's request for a hearing as timely filed and to proceed accordingly.

### 1. THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE FINDING EMOTIONAL DISTURBANCE PREVENTED Ms. KIMBLE FROM MAKING A TIMELY REQUEST FOR A HEARING

I have no quarrel with the substantial evidence test applied by the majority. (Majority opn. at pp. 1427-1428.) I would only add that in examining the

---

[3] Code of Civil Procedure section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

\* Assigned by the Chairperson of the Judicial Council.

sufficiency of the evidence an appellate court must take into account "all inferences which might reasonably have been thought by the trial court to lead to [its] conclusion." *(Bancroft-Whitney Co.* v. *McHugh* (1913) 166 Cal. 140, 142 ·[134 P. 1157]; Evid. Code, § 600, subd. (b).)

In the case before us, Ms. Kimble testified without contradiction she did not open the district's letter which contained the notice of intent to dismiss and the right to request a hearing. There had to be some reason for her failure to do so.

The record is replete with evidence that, at the time of her dismissal, Ms. Kimble was psychologically unable to rationally deal with matters pertaining to her teaching ability including the effect her health problems were having on her competency as a teacher. This irrationality was evidenced by a persistent denial any problems existed. In short, Ms. Kimble refused to face facts. The doctors who examined Ms. Kimble repeatedly referred to her denial of problems relating to her teaching and her health.

In his first examination report, in 1980, Dr. Walker observed: "Mrs. Kimble denied having any difficulties of any kind [and] expressed the opinion that there was no particular need for a psychiatric evaluation since she felt well." In a follow-up examination, in June 1983, Dr. Walker reported Ms. Kimble had not been following recommended therapy for her anemia. He went on to observe: "[T]here is a repeated lack of insight into the significance of some of the problems or *an actual denial of their existence.* . . . [¶] [E]ach time an issue was brought up which might possibly have been interpreted as being critical of her, *she was quick to deny its importance.* . . . [¶] Apparently the patient's *judgment is impaired* in that she *denies having had any problems* of consequence in the last school where she was teaching and *denied* that she had *any problems* with the school children *that have raised a question as to her capacities as a teacher.*" (Italics added.)

Dr. Magara testified when Ms. Kimble came to her office, "she acted perfectly normal but the fact [*sic*] she had all this denial . . . *she was unable to face facts, that she was performing as a very poor teacher.* . . . *This patient had a lot of denials* . . . she didn't accept the fact she needed to have some care." (Italics added.)

In challenging the sufficiency of the evidence, the district relies on Ms. Kimble's deposition testimony which, it claims, shows at the time of her dismissal Ms. Kimble was competently handling her personal affairs—managing her household, paying her bills, and filing her income tax returns. The district placed great emphasis on Ms. Kimble's testimony denying any physical or mental condition prevented her from opening the dismissal

notice from the district. But this testimony could be viewed as entirely consistent with Ms. Kimble's previous denials of any mental or physical problems.

Given the evidence of Ms. Kimble's mental illness and the district's failure to produce evidence of any other reason, the court could reasonably infer her deteriorated mental condition was the cause of her failure to open the district's letter. Indeed, her failure to open the district's letter was consistent with her overall behavior at the time with respect to the school district. The evidence shows a consistent denial by Ms. Kimble any problem existed with her teaching and a refusal to admit she had a mental problem. She even hid from her mother the facts of her successive demotions and ultimate dismissal. Failure to open the district's letter was consistent with her pattern of denying what the district, through her supervisors and physicians, had been telling her for four years. She simply "turned off" the message.

In order to reverse the judgment the majority dismisses all the evidence described above as irrelevant to "competence or incompetence in opening envelopes." (Majority opn. at p. 1431.)

To the contrary, denial is a well-recognized psychological phenomenon which bears directly on Ms. Kimble's "competence ... in opening envelopes." In denial, external reality is rejected and replaced by wish-fulfilling fantasy or behavior. (See Hinsie & Campbell, Psychiatric Dictionary (3d ed. 1960) at p. 197; Freud, The Ego and the Mechanisms of Defense (1966) at pp. 89-90, 174.) To me, Ms. Kimble's failure to open the letter from the school district exemplifies an "ego resort[ing] to denial in order not to become aware of some painful impression from without." (Freud, *supra,* at p. 89.)

2. SECTION 44942 OF THE EDUCATION CODE DOES NOT REQUIRE A SCHOOL DISTRICT TO AFFORD A MENTALLY ILL EMPLOYEE WITH TIME TO RECOVER BEFORE IT INITIATES DISMISSAL PROCEEDINGS

Although the trial court found excusable neglect in Ms. Kimble's failure to file a timely request for hearing it did not order the district to provide a hearing. Instead, the trial court ordered the district to place Ms. Kimble on sick leave subject to reinstatement under the procedures contained in section 44942. The court's order *prohibited* the district from holding a hearing on her dismissal until the procedures set forth in section 44942 have been exhausted.

The trial court erred in construing the procedures in section 44942 as a prerequisite to dismissing a mentally ill teacher. I base this conclusion on the statutory language of the Education Code and its legislative history.

Section 44932, subdivision (a) provides: "No permanent employee shall be dismissed except for one or more of the following causes: .... (4) Incompetency .... (6) Physical or mental condition unfitting him to instruct or associate with children." Section 44942 provides in relevant part: "(a) Any certificated employee *may* be suspended or transferred to other duties ... if the board has reasonable cause to believe that the employee is suffering from mental illness of such a degree as to render him incompetent to perform his duties.... (f) ... [T]he governing board *may* ... place the employee on mandatory sick leave of absence...." (Italics added.)

In contrast to the discretion vested in the district by section 44942, the Legislature has provided the district *"shall not"* dismiss a teacher for *"incompetency"* unless at least 90 days before initiating the proceeding it has notified the teacher of the nature of the charges against her so as to "furnish the employee an opportunity to correct his or her faults and overcome the grounds for the charge." (§ 44938, subd. (b).) "Incompetency" as used in section 44938, subdivision (b) "means, and refers only to, the incompetency particularly specified as a cause for dismissal in Section 44932." (§ 44938, subd. (c).) Because "incompetency" is a separate ground for dismissal from "mental condition" under section 44932 (see *ante*), it is clear the 90-day corrective period mandated by section 44938 does not apply to cases of mental disability. (Cf. *Board of Education* v. *Weiland* (1960) 179 Cal.App.2d 808, 813 [4 Cal.Rptr. 286].)

Historically, the Legislature has never recognized a mentally ill teacher has the *right* to an opportunity for rehabilitation prior to dismissal. From the time of the School Code (Stats. 1929, ch. 23) to the present, the district's power to dismiss and its power to grant leave for purposes of rehabilitation have run on separate tracks. For example, in a case upholding a teacher's dismissal for a "mental condition unfitting her to instruct" the appellate court held the teacher was not entitled to a 90-day notice and opportunity to correct her deficiency under section 5.652 of the School Code because that section expressly excepted physical and mental disabilities. (*Board of Education* v. *Mulcahy* (1942) 50 Cal.App 2d 418, 424 [123 P.2d 114].) Former section 5.652 of the School Code is now section 44938 of the Education Code. The section continues to exclude mental disability from the 90-day period to which a teacher is entitled to overcome the grounds of discharge. (See Discussion, *ante*; and see George, *Dismissal of Permanent Teachers* (1963) 3 Santa Clara L.Rev. 164.)

In support of the trial court's order, Ms. Kimble cites dictum in *Board of Trustees* v. *Porini* (1968) 263 Cal.App.2d 784, 789 [70 Cal.Rptr. 73], in which the court stated: "[T]he Legislature has intended that a tenured teacher shall not suffer permanent termination of her employment unless

and until it has been proven by the school board that her disability is in fact permanent or, as an alternate cutoff period, that it has lasted for a total of two years."

*Porini* arose at a time when a tenured teacher could only be dismissed through a superior court judgment on a complaint brought by the school board. (See former § 13412.) At that time, former section 13437 provided: "[I]n lieu of dismissal the judgment may require the employee to take a leave of absence for only such period as may be necessary for rehabilitation from the incompetency." Subsequent to *Porini,* the authority to dismiss teachers was transferred to the school board subject to review by administrative mandamus and section 13437 was repealed. (Stats. 1976, ch. 1010.) *Porini* held there was insufficient evidence the teacher suffered from a mental disability. (*Id.,* at p. 789.) Therefore, it was a moot point whether the statutory provision "the judgment *may* require the employee to take a leave of absence" mandated the superior court to enter such a judgment in cases of mental disability. *Porini* is unpersuasive authority for the judgment entered in the case before us.

Often a court is faced with a situation where it believes the Legislature is following a wrong, even harmful, policy. It may be requiring a school district to provide a mentally ill teacher an opportunity for rehabilitation, as the trial court did in the instant case, is a better public policy than the one chosen by the Legislature. Be that as it may, it is not the job or the office of the courts to overrule the policy choices of the Legislature. (*Lucas* v. *City of Los Angeles* (1938) 10 Cal.2d 476, 485 [75 P.2d 599].)

The appropriate relief in this case would have been to order the district to treat Ms. Kimble's March 6, 1984, request for a hearing as timely filed. At the resulting hearing the district may, depending on the evidence produced, determine sick leave in lieu of dismissal is the proper disposition of the matter. Indeed the evidence before the board may so strongly support the sick leave option it would represent an abuse of discretion to dismiss Ms. Kimble. But that was not the grounds of the trial court's decision in this case nor had the board held a hearing or considered evidence on this issue.

A petition for a rehearing was denied July 21, 1987. Johnson, J., was of the opinion that the petition should be granted. The petition of plaintiff and appellant for review by the Supreme Court was denied October 15, 1987.