Filed 8/7/14  Winser v. Pardee Homes CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ANTHONY WINSER et al.,<br><br>  Plaintiffs and Appellants,<br><br>v.<br><br>PARDEE HOMES,<br><br>  Defendant and Appellant. | 2d Civil No. B243615<br>(Super. Ct. No. 56-2011-00397236-CU-CD-VTA)<br>(Ventura County) |

In this construction defect case the jury found the defendant developer negligent and the building defective, but awarded no damages.  On appeal plaintiffs claim the judgment is not supported by substantial evidence, damages must be awarded as a matter of law and the verdict was the result of juror misconduct.  The defendant developer appeals the trial court's decision not to award expert witness fees pursuant to Code of Civil Procedure section 998.  We affirm.

FACTS

Anthony and Michelle Winser purchased a home directly from the developer, Pardee Homes (Pardee) in March 2002.  Other than installing a security system and tinting windows, the Winsers have made no modifications to the home.

In March 2004 the Winsers contacted Pardee complaining of water leaks at their doors and windows. Pardee sent its service representative, Robert Spielman, to the home. Spielman looked for cracking and water stains, pulled back the carpet and checked for clogs in the window track weep holes. He found no signs of water intrusion.

The Winsers complained of water intrusion again in 2005. Spielman conducted another inspection but found no signs of water intrusion.

In 2006 the Winsers complained that the exterior paint was bubbling and peeling. Spielman determined that the paint was not bonding properly to the stucco. Pardee repainted the house with "Elastometric" paint.

The Winsers did not complain again until March 2011. They complained about water leaks around windows and doors and paint defects. Spielman inspected but found no evidence of water intrusion. He found, however, bubbling in the paint on the rear elevation of the house. Pardee agreed to paint the rear elevation.

After the painting was complete, the Winsers complained their windows were fogging. Spielman inspected and concluded it was a window warranty problem.

In May 2011 the Winsers filed the instant complaint against Pardee.

The Winsers retained Neil Tomison, a general contractor with expertise in building envelopes. The building envelope includes windows, doors and the general waterproofing of the home. The building envelope also includes a water proof membrane behind the stucco. Tomison conducted tests by connecting a spray rack to a hose and spraying the windows and doors. He found extensive leaking around windows and doors and from tears in the building envelope membrane. Tomison also observed staining and damage to the wood framing caused by water intrusion. The Winsers' expert contractor, Keith Daniels, estimated the total cost of repair at $202,181.23.

Pardee's expert was David Ball, a licensed architect and building contractor. Ball criticized Tomison's testing procedure. Ball testified Tomison sprayed too much water on the windows and doors, causing a "test induced leak." Ball testified he inspected the Winsers' house and saw no staining of the ceiling, drywall, carpet or on the trim or baseboard. If those areas had been subject to moisture, especially over 10 years, it would have been apparent. Ball testified he saw no evidence of damage in any of the photographs taken by Tomison or in any of the photographs taken after Tomison's testing. Ball admitted some water got into the walls through cracks around the vinyl windows. But he attributed the water intrusion to Tomison's testing.

*Verdict*

The jury found that Pardee was negligent and that there were defects in the building envelope, roofing components and general construction. But the jury also found 11 to 1 that none of the defects caused damage to the home. The trial court entered judgment in favor of Pardee.

*Motion for New Trial*

The Winsers moved for a new trial. The motion was supported by affidavits from two jurors.

The jurors accused one juror of being overbearing. He consistently talked over other jurors and would not allow other jurors to express their views. This juror and another claimed a background and experience in engineering and construction. They asserted that photographs depicting damages did not in fact depict damages. The overbearing juror expressed the opinion that if the Winsers were to prevail then "the whole neighborhood would sue." During deliberations two jurors conducted internet research "related to the case and our deliberations" using Google. The votes in the jury room differed from the votes when the jury was polled.

In opposition to the motion, Pardee filed affidavits from the two jurors accused of misconduct as well as three other jurors, including the foreperson.

3

The juror accused of being overbearing denied he "talked over" other jurors. He and the other jurors made every effort to review the evidence with the dissenting juror. No juror claimed any expertise in construction or engineering related to construction. The jurors were having difficulty understanding the term "due care." One juror suggested they "Google" it. The foreperson told the juror not to do that, and that the jury should not consider anything outside the evidence. If any juror Googled "due care," the result was not shared with the rest of the jury. The jury reviewed over 600 pictures entered into evidence purporting to show damage. The jurors did not see any evidence of damage. The vote in the jury room was consistent with the vote reflected when the jury was polled.

The trial court denied the motion for a new trial.

*Costs*

On March 2, 2012, Pardee served the Winsers with an offer to compromise pursuant to Code of Civil Procedure section 998 (section 998 offer). Pardee offered to settle for $5,000 in exchange for mutual releases, with each party to bear its own costs. The Winsers did not accept the offer.

After trial, Pardee filed a memorandum of costs totaling $97,875.42, including expert fees of $77,660. The Winsers responded with a motion to tax costs on the ground that the section 998 offer was made in bad faith.

On February 28, 2012, two days prior to the section 998 offer, the parties held settlement discussions. Pardee offered a global settlement of numerous cases the Winsers' attorney was prosecuting against Pardee. The Winsers' portion of the global settlement offer was $25,000.

The trial court found:

At the time of the section 998 offer neither party had conducted any formal discovery. The Winsers had complained about water intrusion for some time. Their experts claimed to have confirmed water leaks by visual inspection. They gave Pardee a list of defects and a demand of $120,000. Pardee's representatives were at the home many times but claim to have seen no leaks or

4

damages. Pardee made an offer of $25,000 three days prior to the section 998 offer. Pardee does not explain how it could believe that the Winsers who had declined an offer of $25,000 would accept a $5,000 offer three days later. Pardee's offer was made to preserve the right to expert witness fees, not to settle the case.

The trial court granted the Winsers' motion to tax costs as to the expert witness fees only.

DISCUSSION

*THE WINSERS' APPEAL*

I.

The Winsers contend that Pardee failed to meaningfully contest their evidence of damage.

The Winsers, as plaintiffs in this action, have the burden of proof. (See Evid. Code, § 500; *Gebert v. Yank* (1985) 172 Cal.App.3d 544, 552.) Where, as here, the judgment is against the parties who have the burden of proof, it is almost impossible for them to prevail on appeal by arguing the evidence compels a judgment in their favor. That is because unless the jury makes specific findings of fact in favor of the losing plaintiffs, we presume the jury found plaintiffs' evidence lacks sufficient weight and credibility to carry the burden of proof. (See *GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872 [We discard evidence unfavorable to the prevailing party as lacking sufficient verity to be accepted by the trier of fact].) We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence. (*Kimble v. Board of Education* (1987) 192 Cal.App.3d 1423, 1427.)

The Winsers claim their evidence of damage was uncontradicted by Pardee's evidence. But the jury may reject even uncontradicted evidence as lacking sufficient verity. (See *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.)

In any event, the jury had hundreds of photographs purporting to show damage. We presume the jury reviewed those photographs and found insufficient evidence of damage. (See *Kunzler v. Karde* (1980) 109 Cal.App.3d

5

683, 688 [judgment presumed correct; we indulge in all intendments and presumptions to support it where record is silent].) The jury was not required to believe the Winsers' expert when its own view of the evidence contradicted the expert's testimony. The jury is the trier of fact, not the expert.

The Winsers argue that the pictures show staining of framing members due to leaking conditions throughout the home. They believe that as a matter of law the jury erred in finding that this did not rise to the level of damage. They cite *MRI Healthcare Center of Glendale v. State Farm General Insurance Company* (2010) 187 Cal.App.4th 766, 778-779 (*MRI Healthcare*), for the proposition that physical loss or damage occurs when an item of tangible property is physically altered by perils such as fire or water.

In *MRI Healthcare*, *supra*, 187 Cal.App.4th 766, plaintiff's MRI machine was turned off and could not be turned back on. (*Id.* at p. 780.) Plaintiff made a claim under its business policy covering "'direct physical loss'" to insured property. The court determined there was no "'physical loss'" within the meaning of the policy because no external force physically changed the machine. (*Ibid.*)

The Winsers' reliance on *MRI Healthcare* is misplaced. The case does nothing more than interpret a clause in an insurance contract. It says nothing about damages in tort. The Winsers cite no case that would have required the jury to award damages as a matter of law. The jury may well have believed Ball's testimony that the stains on the interior framing members are "lumberyard stains" that occur when the lumber sits outdoors before the building is wrapped or lathed. The jury may have reasonably concluded that stains on framing members enclosed within a wall do not by themselves show any harm to the home's structural integrity, its aesthetic appearance or its monetary value. Thus there is no basis for an award of damages.

## II.

The Winsers contend the verdict was the result of juror misconduct.

6

The Winsers' contention is based on the claim that two jurors stated they had a background and experience in construction and engineering. The Winsers argue this constitutes misconduct in that it is new evidence outside the evidence admitted at trial. (Citing *Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 161.)

But in *Whitlock*, jurors used their experience in the Navy to bring in new evidence about the Navy's practices and procedures. Here although two jurors were accused of claiming experience in construction and engineering, there is nothing to suggest they added any new evidence. They simply used their expertise to analyze the evidence admitted at trial. As our Supreme Court stated in *People v. Steele* (2002) 27 Cal.4th 1230, 1267, "[I]t would be an impossibly high standard to permit these jurors to express an opinion on this evidence without relying on, or mentioning, their personal experience and background."

The Winsers also mention the allegation by one juror that other jurors used Google to conduct internet research related to the case and the deliberations. The trial court ruled the evidence not admissible in that it is vague and lacks foundation. The Winsers do not contest the evidentiary ruling on appeal.

*PARDEE'S APPEAL*

III.

Pardee contends the trial court erred in denying it expert witness fees as costs.

Where a plaintiff rejects a section 998 offer and fails to obtain a more favorable judgment, the trial court in its discretion may award defendant expert witness fees as costs. (Code Civ. Proc., § 998, subd. (c)(1).)

A section 998 offer must be made in good faith. (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1262.) A good faith offer must be reasonable under the circumstances. (*Ibid.*) Normally, a token or nominal offer will not satisfy the requirement of good faith. (*Ibid.*) The offer must have some reasonable prospect of acceptance. (*Ibid.*) A party having no expectation that the offer will be accepted,

7

will not be allowed to benefit from a no-risk offer made for the purpose of recovering large expert witness fees. (*Id.* at pp. 1262-1263.)

Here although Pardee's representatives had inspected the house a number of times, at the time the section 998 offer was made neither side had conducted any formal discovery. Two days prior to the $5,000 section 998 offer, the Winsers rejected a $25,000 settlement offer. Pardee points to nothing that occurred in the two days after the Winsers rejected the $25,000 offer that would lead it to believe they would accept a $5,000 offer. The trial court could reasonably conclude that Pardee had no reason to believe the $5,000 offer would be accepted, but was made to preserve the right to expert witness fees. Thus the offer was not made in good faith. The trial court did not abuse its discretion.

Pardee's reliance on *Culbertson v. R. D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 709-710, is misplaced. There, plaintiff sued a ladder manufacturer for injuries to his back caused when a ladder slid. Discovery showed that the ladder's foot pads had been replaced by foot pads of an incorrect size; plaintiff engaged in strenuous activities inconsistent with the claimed injuries; plaintiff had degenerative disc disease anti-dating the accident; plaintiff has a previous back injury; and plaintiff's employer reconditioned the ladder. The trial court found that, under the circumstances, defendant's $5,000 section 998 offer was made in good faith. The Court of Appeal affirmed.

But the circumstances in this case are different. For one thing, in *Culbertson*, the defendant's $5,000 offer was not made within days of a $25,000 offer. Moreover, just as the court in *Culbertson* affirmed the trial court's exercise of discretion, we affirm the trial court here.

Nor does *Martinez v. Brownco Construction Company, Inc.* (2013) 56 Cal.4th 1014, assists Pardee. There, the plaintiff made two section 998 offers and the defendant failed to obtain a judgment more favorable than either offer. Our Supreme Court held that an award of expert fees may date back to the first offer. The case has nothing to do with whether the offers were made in good faith.

8

The judgment is affirmed.  The parties are to bear their own costs.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.

Tari L. Cody, Judge

Superior Court County of Ventura
_____


Milstein Adelman, LLP, Fred M. Adelman, Leslie J. Eng and Mayo L. Makarczyk for Plaintiffs and Appellants.

Robert B. Titus, Anna T. Amundson, Stutz Artiano Shinoff & Holtz, Paul V. Carelli IV for Defendant and Appellant.